LYNES *v.* STATE, 36 Miss. R., 617.

### HOMICIDE.

A verdict of guilty will be set aside if it appear that illegal evidence was admitted, which *might* have operated to the prejudice of accused; but *aliter*, when it is manifest that the illegal evidence could not have influenced the verdict.

The statements of one or more conspirators are admissible against the others if made in the progress or in prosecution of the common design; provided, however, that the conspiracy be first established by proof *aliunde.*

The rules respecting confessions improperly obtained, considered.

Error to Jones circuit court. HANCOCK, J.

James Hightower, Thomas Morgan Lynes, Thomas Lynes, and Samuel Lynes, were indicted for the murder of one Charles

Landrum, the first as principal, the second for aiding and abet-
ting the murder at the time, and the two last as accessories be-
fore the fact.

Morgan Lynes and Thomas Lynes were first put on their trial
jointly at the October term, A. D. 1858, and were found guilty
and sentenced to be hung. Their motion for a new trial having
been overruled, they tendered a bill of exceptions, which con-
tains all the evidence and the rulings of the court, and sued out
this writ of error.

It appeared, from the evidence, that, at the September term,
A. D. 1857, of the circuit court of Jones county, the three
Lynes had been indicted for larceny, and that the deceased was
the principal witness against them; that shortly after their ar-
rest on this charge, both Thomas and Morgan Lynes had made
threats against Landrum, and accused him of swearing a lie in
his testimony before the grand jury who found the indictment;
that, shortly after the killing, all the dogs of Landrum had
died; that, three days before the killing, one of the dogs fell
down in a fit, like that produced by strychnine, and died imme-
diately after Morgan Lynes had left the premises of Landrum;
that, about the same time, something had been thrown on Mrs.
Landrum at night when she was in bed, and that the next morn-
ing she had sores on her hands and arms; that, on the night of
the 14th of December, A. D. 1857, Morgan Lynes was at Lan-
drum's house, and was engaged in playing at some game (the
name of which does not appear) on a board; that, whilst they
were playing, Landrum's nose commenced bleeding, and, at the
suggestion of Morgan Lynes, he got up and went to the hearth,
and Lynes went to the door of the house, and, as soon as he re-
turned, Landrum was shot through a crack in the house, and
died instantly. Immediately thereafter Morgan Lynes remarked
to Mrs. Landrum, "You cannot accuse us of that; we have
been too good to you." The house of Landrum was a small log
cabin, with only one room, and the cracks were not ceiled or
stopped in one end by the chimney.

A witness, who resided within half a mile of Landrum's, and
about the same distance from Thomas Lynes', testified that, after
the firing of the gun, she went to Landrum's, and from that

place to Thomas Lynes'; that, on her way to Thomas Lynes', she met Lemuel Lynes, and, about one hundred yards further on, she met Morgan Lynes, both of whom were going in the direction of deceased's house; that, opposite the place where she met Morgan Lynes, she heard and recognized the voice of Thomas Lynes, and Hightower, but she did not see them.

A piece of the patching which was shot from the gun was near the body of the deceased. A witness stated that, a short time before the killing, she had seen one of Thomas Lynes' sons wear pants striped like the patching; that the stripes were four copperas threads and *two* blue threads; but when the piece found near the deceased was produced, it was discovered that the stripes were of four copperas and *six* blue threads.

The next day after the killing an inquest was held, and Hightower and the plaintiffs in error were in custody as witnesses. They were examined and kept separate from each other. The plaintiffs in error, during the inquest, were told by several of the jury that their statements conflicted, and if they were guilty of the murder of Landrum, it would be better to tell the truth, and confess. Another person was sent by the jury to the prisoners, charged to make this statement, which he did. On the next morning after this, Thomas Lynes stated to a witness, who was not a juror, and who stated that he held out no inducements to the prisoner to confess, that " Hightower had loaded his gun at his (Lynes') house, about dark, and said he intended to kill Charles Landrum: that he left his house, and afterwards returned, and stated he had killed him; but that he had not hired Hightower to kill deceased." It was also proven that Morgan Lynes stated at the inquest that Hightower had confessed to him that he had killed Landrum.

The district attorney then proposed to prove the confessions of Hightower on these grounds : 1st. Because, being indicted as principal in the first degree, it was important in this trial to show his guilt; and—2d. A *prima facie* case of conspiracy having been made out, his confessions were evidence against his confederates. The court ruled against the objection of the defendants that the confessions were competent evidence; and thereupon it was proven by the same witness, that Hightower,

being informed of Lynes' confession, stated "that he killed Landrum, but that old man Lynes had put the rope around his neck; that old man Lynes had told him he had given all he had to his daughter, and if he would kill Landrum, he would give him his daughter and all he had; that this was about three weeks before the killing; and he went that night to an oak tree in front of Landrum's house, and intended to shoot him while at supper; but when he sat down, he (Landrum) took up his little daughter, and he was afraid he would kill her; that he stood about sixteen steps from the house, and shot him through a crack." The witness further stated that Hightower showed him where he (Hightower) stood, and he then saw the impression of some one's tracks, as though the person that made them had turned around on his heels from the house.

It was proven by a witness who resided with Landrum, that three days before the killing, an arrangement was made for him and one of Thomas Lynes' younger sons to go some distance to a mill, on the day the killing took place, and that it was contemplated that they would remain all night; and that, in pursuance of this arrangement, he was absent when Landrum was killed.

The state offered in evidence certified copies of two deeds, purporting to have been made by Thomas Lynes in September, A. D. 1857. By one of these all the land of the grantor, and by the other all his personalty, were given to his daughter Elizabeth. Objection was made to this evidence, because the deeds were neither proven nor acknowledged; but the objection was overruled. The state, in addition, proved by two witnesses that Thomas Lynes had acknowledged to them that he had given all his property to his daughter.

The defendants offered no evidence, except one witness, who proved for them that a material witness for the state had made threats against Landrum before the killing. The state, in rebuttal, proved by this witness and one other, that he and Landrum had made friends a short time before the killing.

The defendants excepted to the introduction in evidence of the confessions of Thomas Lynes and James Hightower, and to

the reading of the copies of the deeds; and after the admission of the evidence, they also moved to exclude it from the jury.

Several instructions were given, both on behalf of the state and the prisoners. The following instructions asked for by the prisoners were refused:

1. That if the confessions of Hightower and Thomas Lynes were procured by any promise or threat, they are entitled to no weight whatever.

2. That the statement to the prisoners while in custody or under guard, that they had better confess, is sufficient to exclude confessions made soon after.

3. That the guilt of Hightower being material to be established, in order to establish his guilt as principal, his confessions are legitimate for that purpose, but they are no evidence against the parties on trial, nor do they tend to establish their guilt.

4. That the confession of one accomplice or conspirator is no evidence against another, unless made before the completion of the original design; and if the jury believe that the confessions of Hightower were made after the killing of Landrum, and are but a relation of past occurrences, after the purpose of the conspiracy had been accomplished, they are not evidence against the defendants on trial.

5. The fifth instruction asked was a charge upon the weight of extra-judicial and casual declarations, declaring them to be the weakest and most unsatisfactory of all kinds of evidence, &c.

6. The acts and declarations of one of several conspirators (the conspiracy being first established), are not evidence against the others; but such acts and declarations must have been performed and made during the pendency of the criminal enterprise, and before its completion or abandonment, or else, being no part of the *res gestæ*, but the mere relation of a past transaction, they cannot be received by the jury as evidence to charge the other confederates.

*W. P. Harris*, for plaintiffs in error.

The confession of Hightower was improperly admitted; and the court not only erred in admitting over the defendant's ob-

jection, but erred in refusing to exclude them on defendant's motion, and in refusing to instruct the jury that they were not evidence to prove the participation of Thomas Lynes in the murder. Hightower was not on his trial.

As a general rule, a confession is evidence only against the party making it. Rosc. Crim. Ev., 49.

The confession of the principal, of his own guilt, has been admitted to prove simply that he did the act; but never to prove the guilt of others as participants with him. The case of Rex v. Blick, 4 Carr. & Payne, 428, was a confession by plea of guilty, and there was a connection; but this case was subsequently overruled. See Rosc. Crim. Ev., 49, 50.

These statements were made after the murder was consummated, and after Hightower was in custody, and of course could not be admitted, he not being on his trial, as evidence against his accomplices.

The declarations of co-conspirators, to be admissible against each other, must have been made *dum feret opus*, and must be part of the *res gestæ*, and made during the progress of, and in furtherance of the common design of the conspiracy.

Admissions after the whole affair has reached a conclusion cannot affect any party but the party making them. Rosc. Crim. Ev., 77; State v. Poll & Lavinia, 1 Hawks R., 442.

The court will perceive that Hightower's statement that Thomas Lynes promised him his daughter in marriage if he would kill Landrum, and that he had given her all his property, is the only direct evidence of Thomas Lynes' participation; the link which connects the conveyances of property with the murder, and went to the jury with overwhelming force. Even if there had been no effort on the part of the defense to get rid of this formidable evidence, it was the duty of the court to say to the jury that the statement was only evidence of one fact (if for that), to wit, to prove that Hightower killed Landrum, and could not be considered by the jury as any evidence that Lynes incited the killing.

These suggestions are sufficient to show the error of the court in refusing instructions asked by the defendant, which should

have been given, to prevent the jury from attaching the weight of evidence to Hightower's statements.

The confession of Thomas Lynes was not evidence against Morgan Lynes.

There was no earthly evidence of a conspiracy, if we exclude the declarations of Hightower. Com. v. Knapp, 10 Pick., 447–497.

The evidence of Thomas Lynes' confession should have been excluded. He was in custody. He was in the presence of the coroner and the jury, persons of authority; the coroner was a committing magistrate; the investigation before the jury, under our law, has the character of a criminal investigation, and may be attended with like results, arrest and commitment. The solicitations were repeated and urgent, by jurors and by a person commissioned by them. It was repeated to them, that it would be better for them to confess. This was during a trial, and after they had been told a discrepancy in their statements had been detected. One witness says they were in custody only as witnesses; but the circumstances show that they were suspected persons, and in custody. To be told, under such circumstances, that it would be better to make statements, by persons officially investigating the charge and circumstances of the murder, came clearly within the rule. 2 Phill. on Ev. (Cow. & Hill's notes), 238; 1 Dev., 229; King v. Kingston, 4 Carr. & Payne, 387; 4 ib., 570.

. The error of the court, in refusing instructions asked by defendant's counsel, is palpable, and needs no comment.

*T. J. Wharton,* attorney general,

Insisted that the confessions of Hightower is admissible, but that, be the judgment of the court upon this point whatever it may, there is other testimony, independent of the confession, amply sufficient to sustain the verdict.

And he cited, 1 Kelly, 618; 2 Grattan R., 24, 25; 7 Blackf., 198.

HARRIS, J.:

The plaintiffs in error were indicted for the murder of one

Landrum, with James Hightower and Lemuel Lynes, the said Hightower as principal; Thomas M. Lynes, for aiding and abetting the murder at the time; and Thomas and Lemuel Lynes, as accessories before the fact, by inciting and procuring the commission of the offense.

The record before us relates only to the trial of Thomas M. Lynes and Thomas Lynes, who were convicted and sentenced, after a motion for a new trial made and overruled, to be hanged.

A bill of exceptions appears in the record, presenting the testimony and all the proceedings on the trial; and it is assigned for error here—

1. That the court erred in admitting certain copies of deeds, which were not proven and certified for record according to law.

This objection, although properly taken in the court below, and although it should have been sustained, and the deeds excluded, for want of authentication to admit them to record, and thereby to make them evidence, is not material here, as the same fact was proven by the confession of Thomas Lynes, and by other testimony.

2. It is next assigned for error, that the court admitted the confessions of Thomas Lynes.

We think there was no error in this, under the circumstances before us.

3. The court erred in admitting the statements of *Hightower* made to witness, Susan B. Landrum, *after the killing*, as evidence to implicate the other defendants.

The 4th and 5th assignments may be embraced under this general head:

The ground of error is well taken. It is well settled that, even after the conspiracy has been established, admissions of co-conspirators are inadmissible to affect their associates, unless made during the progress, or in furtherance of, or in prosecution of the unlawful design, about which they have conspired. The confession of Hightower, so far as it was introduced to establish the fact that *he* was the perpetrator of the crime, was competent; but so far as it tended to implicate others was incompetent, and should have been excluded from the jury.[1]

[1] 1 Greenl. Ev., 111; Rex v. Watson, 32 Howell's St. Tr., 7; Rex v. Brandreth, ib.,

In cases purely circumstantial, it is impossible for the court to determine what influence the testimony may have produced upon the minds of the jury. We deem it safe, as a *general rule*, to leave to the jury disputed questions of fact; and, therefore, when evidence has been improperly admitted, which may have materially operated in producing conviction, even in cases where our own minds might incline to sustain the verdict upon the testimony that was legal, the case will be reversed, that the appropriate tribunal may pronounce upon the real facts in dispute; and only in cases where the illegal testimony could not have changed the result, will this court refuse to set aside the verdict and judgment, and award a new trial.

We do not intend to express any intimation as to what should or ought to have been the verdict of the jury *without the illegal evidence;* we only intend to say that this evidence ought to have been excluded; and it will be for the jury to whom it be hereafter submitted to say whether the evidence which shall be adduced before them satisfies their minds of the guilt of the accused beyond reasonable doubt.

The 6th assignment of errors is the refusal of the court to give the 1st, 2d, 3d, 4th, 5th, and 6th instructions asked for plaintiff in error.

The first of these instructions, as also the third, fourth, and sixth, should have been given; the second and fifth were properly refused.

Let the judgment be reversed, cause remanded, and a *venire de novo* awarded.

857, 858; Rex v. Hardy, 24 ib., 451, 452, 453, 475; Am. Fur Co. v. U. S., 2 Peters, 358, 365; Crowninshield's case, 10 Pick., 497; Rex v. Hunt, 3 B. & Ald., 566; 1 East P. C., 97, § 38; Nichols v. Dowding, 1 Stark., 81; 3 Greenl. Ev., 94; Regina v. Murphy, 8 C. & P., 297; Regina v. Shellard, 9 C. & P., 277; Rex v. Hardy, 25 St. Tr., 1; Roscoe Cr. Ev., 384, *et seq.;* Wharton Am. Cr. Law, 702; U. S. v. Hinman, 1 Baldwin, 292; Martin v. Com., 11 Leigh, 745; U. S. v. Goodwin, 12 Wheaton, 469; Glory v. State, 8 Eng., 236; Stewart v. State, 26 Ala., 44; Cornelius v. Com., 15 B. Monroe, 539; Waterbury v. Sturdevant, 18 Wend., 353; State v. Poll, 1 Hawks, 442; State v. George, 7 Iredell, 321; State v. Loper, 14 Shep., 293; Malone v. State, 8 Geo., 408.