## STATE v. RACHEL MIKLE.

*Irrelevant Testimony—Consequences of its admission.*

1. On a trial for murder it appeared in evidence that the deceased was, probably, slain while chasing a hog. To connect the prisoner with the homicide the state was permitted to prove (prisoner excepting) a declaration by her that "the hog was bruised, and when salted down after it was killed, was nice, clean meat, but that when she put it in warm water, it would look like clotted blood"; *Held,* that the testimony, standing alone, had no tendency to implicate the prisoner.

2. The admission of irrevelant testimony, over objection properly interposed, is ground for a new trial.

(*Patton* v. *Porter,* 3 Jones, 539, cited and approved.)

INDICTMENT for Murder tried at Spring Term, 1879, of CHEROKEE Superior Court, before *Gudger, J.*

There was a verdict of guilty, judgment, appeal by the prisoner.

*Attorney General*, for the State.

*Messrs. Battle & Mordecai*, for the prisoner:

Cited and commented on *Lynes* v. *State*, 36 Miss., 617, as to effect of circumstantial evidence. Where irrelevant testimony is admitted, a new trial will be granted. *Bank* v. *Whinfield*, 24 Wend., 419. See also *Smith* v. *Russ*, 22 Wis., 439; *State* v. *Freeman*, 4 Jones, 5; *Patton* v. *Porter*, 3 Jones, 539.

SMITH, C. J. The prisoner is charged with the murder of one James Ross, and two others who on the trial were acquitted, as being present aiding and abetting in the crime.

The prisoner and the deceased lived not far apart upon the same branch and between their places of residence, but visible at neither was a cultivated field of the deceased, into which the hogs of Baty Mikle, one of the accused, had broken and committed depredations. Early in the morning of the day of death of the deceased, he started from his house, going in that direction with his dog, and said he would look and see if hogs were in the field. Soon afterwards the dog returned wet and muddy, and on searching, the dead body was discovered in the field, and upon the ground near it were dog and hog tracks and signs of a scuffle, and a hog's tail was found. The body bore marks of violence inflicted on the left side of the neck, and in the opinion of the physician who made an examination by cutting into the bruised part, the deceased was killed by a blow from some heavy weapon dealt upon the neck.

There was no direct proof of the guilt of any of the accused persons and the evidence was entirely circumstantial.

In order to show the prisoner's complicity in the crime, the solicitor proposed and, after objection, was allowed to prove certain declarations of hers, made in the presence of a witness, the purport of which was reduced to writing and submitted to her counsel and to the court, that its admissibility might be passed on before it was heard by the jury.

The witness was then introduced and testified that on the morning of her arrest the prisoner spoke of the hog, that had been dogged at the time when the dead body was found, and said " the hog was bruised and when salted down after it was killed, was nice clean meat, but that when she put it in warm water, it would look like clotted blood."

The evidence, so far as the case discloses, is connected with no facts or circumstances, pointing to the guilt of the prisoner, by which its bearing or materiality can be seen. The declarations stand out alone and unsupported, and the jury were left to draw therefrom their own deductions as to the prisoner's participation in the homicide. The evidence might be rendered competent, in association with other facts, to prove the prisoner's guilt, and if so, these facts should be made to appear upon which its competency depends, so as to remove the force of the objection.

We cannot undertake to measure the influence it may have exercised over the minds of the jury in conducting them to the conclusion expressed in the verdict. The declarations alone certainly furnish no reasonable grounds for the inference that the prisoner committed the criminal act. They only show she was in possession of the hog after its death, but not that she was present when the deceased was slain, or was in any manner a party to the deed. The language ascribed to her is but the expression of a diseased imagination or superstitious fancy, entirely consistent with innocence, and yet the jury may have regarded it as the outcropping of conscious guilt and given it a force, to which it was in no manner entitled. In order to a conviction the

evidence must do more than raise a suspicion or conjecture of the fact found ; it must reasonably warrant the verdict in which such fact enters as a material element.

"It is true," says BATTLE, J., in *Patton* v. *Porter*, 3 Jones, 539, " that if it were testimony at all, it was too slight to have any legitimate effect upon the minds of the jury ; yet it may possibly have misled them, by inducing them to find for the defendant, upon the principle of setting off one warranty against the other. This was of course improper, and as the jury *may have been misled,* we think that the plaintiffs are entitled to a *venire de novo.*" Much more forcibly does the rule apply to a conviction for a capital crime, when the verdict may have resulted from the prejudicial effect of the evidence. See also *Lynes* v. *State*, 36 Miss., 617 ; *Smith* v. *Ross*, 22 Wis., 439, to the same effect.

The verdict cannot be allowed to stand. There is error, and the prisoner is entitled to have her case tried before a new jury. A *venire de novo* is awarded.

Error. *Venire de novo.*