## STATE v. HUGH FREEMAN.

(Filed 22 March, 1922.)

**Criminal Law—Larceny—Evidence—Appeal and Error—Irrelevant Evi-
dence—Prejudicial Error.**

> The circumstantial evidence on the trial in this case for larceny of
> tobacco, tending to show that the prosecutor's tobacco had been stolen and
> brought to market by the defendant and sold on the warehouse floor; that
> he was without money on the day preceding the sale, and had it the day
> following, *is held* sufficient to sustain a verdict of conviction, but a new
> trial is awarded on appeal upon the unexplained introduction of a canceled
> check made payable to another named person, or bearer, without evidence
> that it had ever been in defendant's possession or connecting him with it;
> as such, though technically irrelevant, must have prejudiced the defendant
> to the jury when taken with other evidence relating to his lack of money
> the day before, and his having it the day after the tobacco sale.

CLARK, C. J., dissenting.

APPEAL by defendant from *Devin, J.,* at January Term, 1922, of
FRANKLIN.

The defendant was indicted for the larceny of 238 pounds of leaf
tobacco, the property of E. R. Grissom. There was a count for receiving
the tobacco knowing it to have been stolen. The following is the mate-
rial part of the State's testimony:

F. G. Avent testified that he was in Raleigh on 3 November, 1921, at
the Union Warehouse. Had carried a load of tobacco there for sale;
that he got there the night before; that he lived at his father-in-law's,
John Allen, in the "Hurricane," that he, John Allen, and Jesse Jackson

drove in a wagon by Grissom's home and went to Raleigh by the Fall's of Neuse road. That this was not the nearest road to Raleigh; that some one asked him to help him pack a pile of tobacco in baskets in a warehouse, and that he helped a man to straighten out a pile of tobacco; that it was placed in baskets in four grades; some of it was lugs or sorry tobacco. The man told him he might have the sticks, as he was not going to plant any the next season. He lived in Warren County, and doesn't know who the man was, but he thinks it was the defendant; that defendant and his uncle, Mr. Allen, came to his house and asked him if he could recognize the defendant as the man who got him to help him pack the tobacco in Raleigh. He told them he thought he could.

E. A. Grissom testified that he lived on Ike Winston's land, and cultivated a crop of tobacco, and had a lot of 238 pounds ready for market on the night of 2 November. Somebody entered his pack house and carried it off; that there were three tracks that led from the pack house to the woods, where a horse had trampled the ground; that he traced the tobacco by scraps until within 30 feet of the woods; that he went to Raleigh on Friday and found one pile of his tobacco and recognized it, but did not claim it. That he also recognized the sticks, six of them he found at Avent's. Young testified that he was in a garage on Friday evening when defendant came in and paid a small bill, about $3.25, and said he didn't mind paying garage bills if he could make money as easy as he made that last night. Defendant had other money besides that he paid the bill with.

W. C. Young testified that he saw defendant in Raleigh on Friday at the tobacco warehouse about 12 o'clock.

John Young testified that he saw a man asleep early in the morning, 3 November, in a pile of tobacco, whom he took for defendant.

Latta Harris testified that he ran a garage at Youngsville, and on Thursday evening, 3 November, he repaired an auto for defendant, and he pawned his pistol as security, and Friday evening he did more work for him and he paid him all, about $7, Friday evening.

Jesse Jackson testified that he went in a wagon with Avent and Allen to Raleigh Thursday night; that they passed the woods near Grissom's and went the Fall's road to Raleigh.

A. D. Dickerson testified that E. A. Grissom, the prosecutor, married his daughter. That about seven hours after Grissom missed his tobacco, the witness went down to the woods where the tracks led from the pack house, and in the woods he found a brown piece of paper on which was written in pencil the words, "Hue Freeman and Miss Ever Hackody, Creekmore, 1921"—to the introduction of this paper defendant objected; objection overruled, and defendant excepted; exception No. 1.

"The State introduced a canceled check for $123, payable to H. B. Allen or bearer, with no endorsement on the back. To the introduction of this paper-writing defendant objected; objection overruled, and defendant excepted"; exception No. 2.

Defendant demurred to the evidence, and himself offered no evidence. There was a verdict of guilty. Defendant moved to set aside the verdict as being against the weight and contrary to the evidence; motion denied, and defendant excepted.

Assignments of error:

1. To the introduction of the paper-writing with the names "Hue Freeman" and "Miss Ever Hackody, Creekmore, 1921," on it, because there was nothing connecting defendant with said paper-writing, no proof that it is in the defendant's handwriting, or that it was ever in defendant's possession.

2. To the introduction of canceled check payable to H. B. Allen or bearer, because there was no evidence to connect defendant with it; or that he ever owned it or received the proceeds of it.

3. The failure of the court to set aside the verdict because the evidence was not sufficient to convict the defendant.

The jury convicted the defendant, and from the judgment he appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*N. Y. Gulley, B. F. Holden, and W. M. Person for defendant.*

WALKER, J. There is one exception by the defendant which we think is well taken. The State introduced in evidence a canceled check for $123, payable to H. B. Allen or bearer, which was not endorsed. The defendant's objection to this paper as evidence was overruled, and he duly excepted. We are unable to conceive in what way, or for what purpose, this evidence was competent or relevant. There is nothing on the check showing that it had any connection with the case. It was not drawn by the defendant, so far as appears, and his name is not on it. Why it was allowed to be considered by the jury we were not informed. It was wholly irrelevant to the controversy. But it was contended by the State that if it was wholly irrelevant, the effect would be, in law, that it was harmless and not, therefore, ground for reversal. But we are not sure of this conclusion. Having been admitted by the court, over the defendant's objection, it was capable of being used by the State as some evidence of the defendant's guilt, in connection with the other evidence, and was no doubt so used. It was argued before us that it was so used, and very effectively. This is not in the record, but we are at liberty to infer that as the court held it to be relevant and competent evidence of guilt,

the State made use of it as such to further a conviction. It does not appear to us that it was harmless or did not prejudice the defendant. While there is nothing to connect the defendant with the drawing of the check, or the possession of it at any time, it was no doubt used for the purpose of showing that as he had money on Thursday, when he had none on the day before, he must have received the money, in some way, by means of the check, but this is not a warrantable inference. There is no evidence that the check was found in defendant's possession and taken from him. There is nothing more in the proof than the bare check itself, without the least explanatory evidence, and it should have been excluded by the court as prejudicial to the defendant. It cannot be said that irrelevant evidence, though generally so, is always harmless. We have held otherwise. *S. v. Jones,* 93 N. C., 611; *S. v. Mikle,* 81 N. C., 552. It may sometimes, even though rarely, be very prejudicial to the party against whom it is admitted, as it was held to be in *S. v. Jones, supra.* Considering the nature of the other evidence in this case, that relating to the check, though technically irrelevant, might have been used to account for defendant's having money at one time when the night before he was impecunious, and we have no doubt it was so used by the State and considered by the jury.

There was evidence upon which the jury could have convicted the defendant apart from the check, but they should have been confined to the competent and relevant proof in considering the case. He was the man who was seen at the tobacco warehouse the day after the theft was committed, and was recognized as the man who had the tobacco there, and asked the witness F. G. Avent to help him to straighten it out and pack it, and gave him the sticks as he was not going to plant tobacco the next season. The evidence was sufficient to identify the defendant as the one who had the tobacco at the warehouse. *S. v. Carmon,* 145 N. C., 481; *S. v. Lytle,* 117 N. C., 803; *S. v. Costner,* 127 N. C., 566; *S. v. Lane,* 166 N. C., 333. But the evidence as to identity is stronger here than it was in those cases. There was evidence as to the identity of the tobacco found in the warehouse with that which was stolen.

While we hold that there was some evidence for the jury to consider, upon the question of defendant's guilt, that in regard to the check was incompetent, and should not have been admitted, and was sufficiently prejudicial to entitle the defendant to another trial.

The other exceptions may not be again presented.

New trial.

CLARK, C. J., dissenting: I concur in the statement in the opinion of the Court that "there was evidence upon which the jury could have

convicted the defendant apart from the check." This also clearly appears upon the summing up of the evidence as set out by *Mr. Justice Walker.*

The evidence in regard to the check may have had slight probative force, and the jury may have thought that it would add none. But the evidence was not incompetent, but merely irrelevant. It could have had no prejudicial effect.

The defendant was not entitled to a new trial for the mere admission of irrelevant testimony. The admission of merely irrelevant testimony cannot be held for error unless it is shown to be prejudicial, *Ruffin, C. J.,* in *S. v. Arnold,* 35 N. C., 189, often cited since; *Bynum, J.,* in *S. v. Gailor,* 71 N. C., 92; *Smith, C. J.,* in *Comrs. v. Lash,* 89 N. C., 165; in *Gaylord v. Respass,* 92 N. C., 557, and in *Jones v. Call,* 93 N. C., 179; *Deming v. Gainey,* 95 N. C., 532, and there are numerous other cases to this well settled principle.

It cannot be shown that this evidence was prejudicial, for if it does not tend to show the guilt of the defendant, it proves nothing and is harmless. It is not enough that the defendant should assert that the evidence, if irrelevant, was hurtful, but that must be pointed out, and this has not been done.