STATE v. LEE EDWARD GASKINS.

(Filed 24 February, 1960.)

**1. Criminal Law §§ 49, 84—**

Where there is no direct evidence that the defendant gave a prospective witness money or attempted to bribe her, but the evidence descloses at most a possibility that he did so and an opportunity for so doing, the State may not attempt to prejudice defendant by inferring an attempt at bribery on his part by asking another witness questions on cross-examination in regard to money in the possession of the prospective witness and the turning over of the money to the police, the testimony having no tendency to contradict any testimony given by the witness on direct examination.

**2. Criminal Law § 33—**

Evidence which merely discloses the possibility of the existence of a collateral incriminating circumstance should be excluded, since the attention of the jury should not be distracted from the material matters by evidence raising only a conjecture or suspicion in regard to incriminating circumstances.

**3. Same—**

The admission of irrelevant evidence having the sole effect of exciting the prejudice or sympathy of the jury may be held prejudicial.

**4. Criminal Law § 162—**

The admission of irrelevant evidence having a tendency to prejudice defendant in the eyes of the jury cannot be held harmless even though

there is ample competent evidence to sustain a conviction, since it cannot be determined on appeal whether or not the verdict was influenced by the incompetent evidence.

APPEAL by defendant from *Bundy, J.,* November 1959 Term, of PITT.

Defendant was tried upon a bill of indictment in which he was charged with the operation of a motor vehicle on the public highways while under the influence of intoxicating liquor.

Plea: Not guilty. Verdict: Guilty.

Judgment: Prison sentence, suspended on condition defendant pay a fine of $250.00 and costs and deliver his operator's license to the clerk.

Defendant appealed and assigned errors.

*Attorney General Seawell and Assistant Attorney General Rountree for the State.*
*Albion Dunn for defendant, appellant.*

MOORE, J.  A narrative of a portion of the evidence is necessary to an understanding of the assignments of error upon which defendant relies. The events herein recounted took place in the town of Ayden.

Defendant and a friend, Alton Worthington, were together during the evening of 18 July 1958. They were riding in defendant's Ford pickup. They visited three service stations and had several drinks of whiskey. Near midnight they went to the home of Mrs. Johnny Williams. Mrs. Williams had retired. About the time her daughter, LuNell Williams, returned from a movie, Mrs. Williams heard "some confusion" in front of her house and went out to investigate. She saw Alton Worthington and told him to leave. He said he would leave "when he got good and ready," that Lee Edward Gaskins was drunk and couldn't drive. Defendant was in the pickup; she tried to arouse him but couldn't. She told LuNell to go to the police station and get an officer to come and get them out of the yard. The pickup drove off. It arrived at the police station about the same time LuNell got there. Mr. Sutton, the police officer on duty, arrested defendant and charged him with drunken driving. The chief point in controversy at the trial was whether or not defendant was driving the pickup on the occasion in question.

Over the repeated objections of defendant the court admitted in evidence a course of testimony summarized as follows:

Clifton Dennis, a policeman, testifying for the State in rebuttal, stated that sometime after 18 July 1958 he instructed LuNell Williams "that if (defendant) came back to her any more to offer her

any money for her to take it and try to take it with her mother or some good witness" and as soon as she got the money to carry it to the police, Mr. Sutton; that "within about two hours the money was to the police station."

Mrs. Johnny Williams, witness for defendant, testified, on cross-examination in response to questions by the solicitor, in substance as follows: Defendant and Alton Worthington came to her home while LuNell was there. They were on the porch. LuNell was on the porch with them. They left and LuNell came into the house. Lu-Nell had three one-hundred-dollar bills. She and LuNell immediately took this money to the police station and gave it to Mr. Sutton.

Mrs. Williams did not hear the conversation, if any, that took place on the porch and did not see the defendant give LuNell any money. LuNell was in Newport News, Virginia, at the time of the trial and did not testify.

Mr. Sutton, the arresting officer, testified that LuNell, in the presence of her mother, gave him three one-hundred-dollar bills sometime in September 1958. The bills were admitted in evidence.

The defendant in apt time moved to strike all testimony relating to the money transaction. He testified that he did not give LuNell the money and knew nothing about it.

The gist of the State's argument in support of the competency of this evidence is succinctly stated in its brief as follows: "Evidence of an attempt to bribe a witness to alter the facts being relevant and material, the trial court allowed such evidence to be considered by the jury. The trial court exercised its discretion in allowing the method and duration of the cross examination when the purpose of the cross examination was to determine the interest or bias of the witness and to impeach her credibility."

This cross-examination of Mrs. Williams was most certainly not for the purpose of impeaching her. She did not profess to know and gave no testimony as to whether or not defendant drove the pickup on the night of his arrest. It is clear that the State desired the jury to infer from her testimony and that of the officers that defendant had attempted to bribe LuNell Williams to alter her testimony. Therein lies the error of its admission. There is no evidence in the record that defendant gave LuNell Williams the money or attempted to bribe her. At most the evidence discloses a possibility that he did so and an opportunity for so doing. Perhaps, had LuNell testified, the deficiency in the evidence would have been supplied and the testimony rendered competent. But this is only conjecture.

". . . (E)vidence which merely shows it possible for the fact in

issue to be as alleged, or which raises a mere conjecture that it was so, is an insufficient foundation for a verdict, and should not be left to the jury." *State v. Vinson,* 63 N.C. 335, 338. ". . . (S)uch facts and circumstances as raise only a conjecture or suspicion ought not to be allowed to distract the attention of juries from material matters . . ." *Pettiford v. Mayo,* 117 N.C. 27, 28, 23 S.E. 252.

*State v. Freeman,* 183 N.C. 743, 111 S.E. 6, presents an analogous situation. Defendant was charged with the larceny of tobacco. It was shown that he was without money on the day preceding the sale by him at the warehouse and had funds on the day following. A cancelled check, drawn by the warehouse and payable to another named person, was admitted in evidence without explanation. Defendant had not endorsed it and there was no evidence connecting him with it. The Court said: "It does not appear to us that it was harmless or did not prejudice the defendant. . . . There is nothing more in the proof than the bare check itself, without the least explanatory evidence, and it should have been excluded by the court as prejudicial to the defendant. It cannot be said that irrelevant evidence, though generally so, is always harmless. We have held otherwise. . . . There is evidence upon which the jury could have convicted the defendant apart from the check, but they should have been confined to the competent and relevant proof in considering the case." ". . . (I)f the only effect of the evidence is to excite prejudice or sympathy, its admission may be ground for a new trial although ordinarily the reception of irrelevant evidence is considered harmless error." North Carolina Evidence: Stansbury, sec. 80, pp. 143-4; *State v. Page,* 215 N.C. 333, 1 S.E. 2d 887; *State v. Strickland,* 208 N.C. 770, 182 S.E. 490; *State v. Jones,* 93 N.C. 611; *State v. Mikle,* 81 N.C. 552.

In the case *sub judice* there was ample evidence to sustain a conviction other than that drawn in question on this appeal. But we have no way of determining what evidence influenced the jury. It may well be that the evidence in question was the deciding factor.

New trial.