## STATE v. ROBERT BINES.

(Filed 25 November, 1964.)

**1. Constitutional Law § 32—**

Defendant's waiver of counsel must be intelligently and understandingly made in order to be effective, but the court is not justified in forcing counsel upon an accused who wants none.

**2. Same—**

Where the record shows that the trial court was careful to advise defendant of the charges against him and the permissible punishment in case of conviction, and that defendant, experienced by a number of prior prosecutions, with full understanding waived appointment of counsel, it is not error for the trial court to permit the defendant to begin trial without counsel. G.S. 15-4.1.

**3. Criminal Law § 30.1—**

One defendant has no ground to complain that his codefendants, before the conclusion of the State's evidence, withdraw their pleas of not guilty and enter pleas of guilty, when neither of them testifies against defendant and there is no indication of any deal by the State in return for the change in pleas, each being given a prison sentence.

**4. Constitutional Law § 32—**

Where one defendant, at the time of arraignment, waives counsel, the fact that his codefendants during the trial change their pleas from not guilty to guilty does not require the court of its own motion to reiterate the seriousness of the charge and caution defendant to reconsider his waiver of counsel.

APPEAL by defendant from *Hobgood, J.,* March, 1964 Session, WAKE Superior Court.

The appellant, Robert Bines, and two others, Andy Edward McClain and Cedric Bost, were charged in a bill of indictment with the felonious breaking into and larceny from the Wake County A. B. C. Store No. 3 at Wendell. The stolen property consisted of five cases of whiskey of the wholesale value of $203.73. The offenses were alleged to have been committed on January 16, 1964.

At the time of arraignment, the defendants McClain and Bost were represented by counsel of their own selection. They entered pleas of not guilty. The appellant Bines filed the following before entering his plea of not guilty:

"The undersigned represents to the Court that he has been informed of the charges against him, the nature thereof, the statutory punishment therefor and the right to appointment of counsel upon his representation to the court that he is unable to employ counsel

and the reasons therefor, all of which he fully understands. The undersigned now states to the Court that he does not desire the appointment of counsel, expressly waives the same and desires to appear in all respects in his own behalf, which he understands he has the right to do.   /s/ Robert Bines, Defendant.

"Sworn to and subscribed before me this 18 day of February, 1964.   /s/ Jane L. Caruthers, Clerk of Superior Court."

The Court entered the following:

"I hereby certify that the above named defendant has been fully informed in open Court of the charges against him and of his right to have counsel appointed by the Court to represent him in this case; that he has elected in open Court to be tried in this case without the appointment of Counsel; and that he has executed the above waiver in my presence after its meaning and effect have been fully explained to him.

"This 18 day of February, 1964.   /s/ Hamilton H. Hobgood, Judge Presiding."

The State introduced evidence of the breaking and entering of the described building and the larceny of five cases of whiskey — one each of Kentucky Gentleman, Melrose Bourbon, Glenmore, Millstream, and J. W. Dant. Later, during the night of the theft, one case of J. W. Dant was taken from an automobile belonging to Andrew Williams — four other cases from a lavendar-colored automobile belonging to the defendant Bost. At about 8:30 on the night of the 16th, an eye-witness saw an automobile which he later identified as belonging to the defendant Bost parked at the rear end of the ABC store and standing beside it was the appellant Bines. Another witness saw the three defendants at the Bost home about eleven o'clock on the night of the 16th. They said they had some whiskey and wanted help to get rid' of it. All three of the defendants were talking about it being "hot." The State offered other circumstances tending more or less strongly to implicate the three defendants.

Before the conclusion of the State's evidence, defendants McClain and Bost, through their respective counsel, withdrew their pleas of not guilty and entered pleas of guilty. However, neither testified as a witness in the case. During the trial some of the State's witnesses testified with respect to admissions of McClain and Bost which tended also to implicate appellant Bines, who did not object. Bines brought out the following on cross-examination:

"When we met with defendant Bost and his attorney he told us that you (defendant Bines) and McClain brought the whiskey to his house.

"It was about a month after their arrest that your name (Bines) was even mentioned in it. The solicitor and I did not promise you (Bines) anything. Defendant Bost was not promised anything during the conversation with him in the presence of his attorney.

"The last story he told was when he testified at the preliminary hearing. The first story he told in the presence of his attorney was that you (Bines) and McClain brought the whiskey to his house and that that was the first time he had seen the whiskey. Then when he testified under oath, he said that all three of you went there to the whiskey store."

The appellant not only cross-examined State's witnesses, but testified in his own behalf, and made an argument to the jury. He denied any connection with the charges contained in the indictment. However, before the appellant took the stand, Judge Hobgood advised him: "The State has rested its case against you now and you have the privilege of going upon the stand, testifying in your own behalf, or you may not go upon the stand. If you do testify you will be subject to cross-examination by the solicitor. If you do not go upon the stand, the jury will be instructed that that is not to be considered to your prejudice just because you did not see fit to testify. Which do you want to do?"

"The defendant Bines states, 'I want to go on the stand and testify.'"

The appellant testified, denying any implication in the charges. On cross-examination, he admitted:

"I got twelve months for house-breaking and larceny. I got assault with a deadly weapon sometime around September 14, 1936. You (solicitor) have got the record there on a five-to-seven year sentence on March 12, 1938. I guess I did get five-to-seven years for assault with a deadly weapon with intent to kill in 1946 and I know in 1950 I got two years for assault with a deadly weapon, and another one in 1952 for two years for that same thing. In 1953 I got framed on a whiskey charge and got thirty months for that liquor charge. No, I did not get 12 months in 1956 for assault with intent to kill. I ain't never got 12 months for assault with a deadly weapon. I got two years out of here with the charge assault with a deadly weapon. In November of 1960 I got 60 days suspended sentence for disorderly conduct and interfering with an officer. I never been caught no way stealing because that ain't my business. My trademark is by business and my trademark is fighting."

. The jury returned a verdict of guilty. The court imposed a prison sentence of not less than eight nor more than ten years. The defendant gave notice of appeal and upon his request the court appointed his present counsel of record to perfect the appeal. The record discloses that McClain and Bost each received an active prison sentence of five to seven years.

*T. W. Bruton, Attorney General, Harry W. McGalliard, Deputy Attorney General, James F. Bullock, Assistant Attorney General for the State.*
*Harold D. Coley, Jr., for defendant appellant.*

HIGGINS, J.   The defendant raises three questions on this appeal: (1) Did the court violate the defendant's constitutional rights by permitting the State to proceed against the defendant after the two co-defendants had withdrawn their pleas of not guilty and entered pleas of guilty during the trial? (2) Did the court violate defendant's constitutional rights by failing to reiterate the seriousness of the charges and to allow him to reconsider his waiver of counsel after the other defendants had changed their pleas? (3) Did the defendant intelligently and understandingly waive his right to have counsel appointed for his defense?

The record discloses that Judge Hobgood was careful to advise the defendant of the charges against him and the permissible punishment in case of conviction. With this full understanding, the appellant waived appointment of counsel and stated his desire to appear in all respects in his own behalf. The defendant's waiver of counsel in this case is not the act of an immature or inexperienced person unfamiliar with criminal court procedure. According to his own admission, he had served eight prison sentences totaling approximately 20 years as a result of convictions for violations of criminal laws dating back to 1936. "The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L. ed. 1461. "The record must show, or there must be an allegation in evidence which shows, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver." *Carnley v. Cochran,* 369 U.S. 506, 82A S.Ct. 884, 8 L. ed. 2d 70. "The constitutional right (to counsel), of course, does not justify forcing counsel upon an accused who wants

none." *Moore v. Michigan*, 355 U.S. 155, 78 S.Ct. 191, 2 L. ed. 2d 167; *Herman v. Claudy*, 350 U.S. 116, 76 S.Ct. 223, 100 L. ed. 126.

The court did not commit error in permitting the defendant to begin the trial in this case without counsel, in view of his intelligent, specific, and unequivocal waiver. G.S. 15-4.1.

Did the court commit error in permitting the State to continue the case against the appellant after McClain and Bost changed their pleas? The appellant had no right to require the co-defendants to continue their unequal contest with the State. The course of the trial, insofar as the appellant was concerned, did not change in any respect. Neither of his co-defendants testified for the State. Their pleas of guilty did not deprive the appellant of any evidence otherwise available to him. We may speculate upon the probable effect the two pleas had on the jury. However, legal rights ordinarily are not based on speculation. There is no suggestion the State made a deal with McClain and Bost in return for their change of pleas. Neither testified. Both were given prison sentences of five to seven years. The appellant's sentence was from eight to ten years. His horrible criminal record could easily account for the difference.

The appellant having stated under oath that he did not want counsel and preferred to conduct his own defense, the court was warranted in permitting him to continue unless and until he gave indication that he preferred a different course. It was up to him to make an appropriate move to that end. When the jury was impaneled in his case, jeopardy attached. For the court of its motion to order a mistrial unless at his instance, would raise a serious question whether he could be tried again for the same offense. *State v. McIntosh*, 260 N.C. 749, 133 S.E. 2d 652; *State v. Birckhead*, 256 N.C. 494, 124 S.E. 2d 838; *State v. Barefoot*, 241 N.C. 650, 86 S.E. 2d 424.

The State did not offer any evidence made available by the pleas of guilty. The defendant was not deprived of any evidence by reason of those pleas. Careful examination of the assignments of error and inspection of the record proper fail to disclose error of law in the trial.

No error.