STATE OF NORTH CAROLINA v. KENNETH JAMES WRIGHT

No. 16

(Filed 12 April 1972)

1. **Criminal Law § 76— confession — capital crime — right to counsel — determination of indigency**

     In a prosecution for the capital crime of rape, the trial court erred in finding that defendant was not indigent and could employ counsel at the time he confessed and that he, therefore, could not invoke the provision of former G.S. 7A-457 that counsel could not be waived in a capital case, where the evidence before the court disclosed that when arrested defendant was an eighteen-year-old marine earning $149.00 per month, that he had $5.00 in cash, an automobile on which $56.00 per month was due, and two bonds costing $18.75 each which were in his mother's possession in Ohio, that his stepfather earned $9,000 per year and had a wife and eleven children other than defendant, and that any contribution the stepfather might make would have to be borrowed; consequently, the trial court erred in the admission of a confession made by defendant at a time when he was indigent and without counsel.

2. **Criminal Law § 169— erroneous admission of confession — prejudicial error**

     The erroneous admission in a rape prosecution of an indigent defendant's confession made without benefit of counsel cannot be considered harmless and requires a new trial, notwithstanding there was other evidence sufficient to support a conviction.

     Justice LAKE dissenting.

     Justices HUSKINS and MOORE join in dissenting opinion.

APPEAL by defendant from *Rouse, J.,* September 7, 1971 Session of CRAVEN Superior Court.

In these criminal prosecutions, the defendant, Kenneth James Wright, was charged by bills of indictment with three felonies: (1) housebreaking, (2) crime against nature, and (3) rape. The three indictments grew out of a single episode which occurred in the trailer home of Mr. and Mrs. Parks at No. 1 Jones Street, Greenfield Heights Trailer Park, Havelock, North Carolina.

According to the State's evidence, Mrs. Parks, wife of a member of the Marine Corps, was at home alone on the morning of June 4, 1971. At approximately 9:30 a.m. the defendant, also a member of the Marine Corps, appeared at the trailer door and requested permission to use the telephone. When Mrs.

Parks told him she did not have a telephone, he drew a knife and forced entrance into the trailer as charged in Indictment No. 1. Before leaving he committed the acts charged by Indictments Nos. 2 and 3. During the struggle, to protect herself, Mrs. Parks struck the defendant with a pair of scissors, inflicting a shallow stab wound in the chest.

After the defendant left, Mrs. Parks reported to officers what had occurred. The officers broadcast an alert. Shortly thereafter, the defendant appeared at the Marine Corps Base for treatment of a fresh stab wound in the chest. The officers, having been alerted, took the defendant into custody for questioning about what had occurred in the trailer home. Present at the interrogation were Marine Corps and State officers who gave the defendant the required warnings after which he signed a waiver of his rights, including the right to counsel, and signed a written confession admitting his implication in the offenses reported by Mrs. Parks. Warrants were issued and a date fixed for the preliminary hearing. The court on a showing of indigency appointed Mr. Kennedy W. Ward attorney to represent the defendant.

Mrs. Parks, in company with her husband, attended the preliminary hearing. However, before she entered the courtroom, her husband lifted her up so she could see through the window into the courtroom where a number of persons were standing. She saw and recognized the defendant as her assailant. She had never seen him before he appeared at the trailer. Her view through the window was the first time she had seen him since. The defendant was ordered held without bond.

At the trial in superior court the defendant, through his court-appointed counsel, entered pleas of not guilty. The prosecuting witness, Mrs. Parks, testified, identifying the defendant and described what he had done in the trailer. The State introduced an expert who testified that he had lifted finger and palm prints from articles in the Parks' residence. By comparing them with the defendant's known prints, the witness found points of similarity sufficient in number to enable him to express the opinion that the lifted prints had been made by the defendant.

When the State undertook to introduce in evidence the written confession, the defendant objected. The court conducted a

State v. Wright

voir dire in the absence of the jury. Mr. Charles Lee Atkinson of the Naval Investigative Section, testified that he and Special Agent James M. Wilson of the State Bureau of Investigation, conducted the interrogation. He testified:

> "After advising him of his rights, I asked him did he have any objections in signing a military suspect's acknowledgement and waiver of rights form signifying the fact that he did, in fact, understand his rights. He indicated that he had no objections to it and voluntarily signed his name to the military suspect's acknowledgement and waiver of rights form at 12:50 hours on 4 June 1971. In regard to counsel, the statement says: 'I understand my rights as related to me and as set forth above. With that understanding, I have decided that I do not desire to consult with either a civilian or a military lawyer at this time and I do not desire to have such a lawyer present during this interview. I make this decision freely and voluntarily and it is made with no threats having been made or promises extended to me.' "

The defendant objected to the introduction of the confession on the ground it was obtained at a time when he, an indigent, was not represented by counsel. The State, however, contended the defendant was not an indigent at the time of the interrogation and was not entitled to have counsel appointed to attend the interrogation.

The voir dire examination, in the absence of the jury, disclosed the following: On June 7, 1971, before the preliminary hearing, the defendant signed an affidavit alleging his indigency and requesting appointment of counsel. His affidavit stated his monthly salary was $149.00; his only property was a 1970 Mustang automobile on which payments of $56.00 per month were due; he owed debts of $4,000.00; and he had only $5.00 in cash. The court found indigency and appointed Mr. Kennedy W. Ward as counsel.

However, when the State insisted the confession should be admitted, the trial judge called and examined the defendant. He testified he was eighteen years of age and had been in the Marine Corps for eleven months. His pay was $149.00 per month. He had authorized the Marine Corps to deduct $37.50 per month for savings bonds to be sent to his mother in Ohio. He had $5.00

when arrested. He testified he owned an automobile on which $56.00 per month was due. The value of his equity in it was not shown.

The defendant called his stepfather who testified that the defendant's mother had received two $25.00 bonds, each of which had cost $18.75. They were payable to the son and his mother. The defendant is one of twelve children. The stepfather works as manager of a garage in Ohio at a salary of $9,000.00 per year. The defendant's mother had worked as a maid at a hotel until six months ago when, "She quit to look after the kids." The stepfather testified that in order to help the defendant employ a lawyer, he would have to borrow the money and, "My family would have to do without."

At the conclusion of the voir dire, the court found the defendant's pay to be $149.00 per month and that in six months he could have accumulated bonds of a value of $225.00. There was no finding as to the defendant's indebtedness though he testified he had $5.00 and a 1970 Mustang on which payments of $56.00 were due each month.

The foregoing was the evidence with respect to the indigency of the defendant at the time of his interrogation. Based thereon, the court found as a fact the defendant was not indigent. "14. That the defendant had adequate resources with which to employ counsel at the in-custody interrogation stage of the proceeding in this case." The court concluded: "3. The defendant not being an indigent was not required to give a written waiver of counsel at the in-custody interrogation stage." The court ordered the confession admitted in evidence.

Having recited the evidence and the findings, we deem it fair to the trial judge to quote the explanation for his ruling which appears in the record of the case on appeal. "Court: I want to be frank; this question has not yet been to the Supreme Court. Now, Mr. Solicitor, I will leave it up to you. I want you to confer and think about it. If I'm wrong, then you are the man that's got to try the case a second time." The court then admitted the confession in evidence over defendant's objection. The jury returned verdicts of guilty in each of the three cases, recommending the punishment be imprisonment for life on the rape charge. From judgments imposed on the verdicts, the defendant appealed.

*Robert Morgan, Attorney General, by James L. Blackburn and Russell G. Walker, Assistant Attorneys General, for the State.*

*Kennedy W. Ward for defendant appellant.*

HIGGINS, Justice.

The three charges, rape, crime against nature, and felonious housebreaking, all grew out of a single episode. The three cases, on motion of the State, were consolidated and tried together. Before confessing, the defendant signed a waiver of rights and made the confession which was reduced to writing and signed by him. The court, after hearing and findings of fact, concluded that the confession was voluntarily and understandingly made after proper warning and permitted the State to introduce it in evidence. In the confession the references to the separate offenses are so interwoven as to make the confession one connected story. To relate the admissions exclusively to any one of the charges without involving the others would be impossible.

The result is that if the confession was inadmissible on the charge of rape, the State could not make it admissible by consolidation with the lesser charges. So the critical question is whether the confession is admissible on the charge of rape.

At the time the offenses were committed, the confession was obtained (both on June 4, 1971), and the trial held (September 10, 1971), Section 7A-457 of the North Carolina General Statutes was in full force and effect. Subsection (a) provided:

"An indigent person who has been informed of his rights under this subchapter may, in writing, waive any right granted by this subchapter, if the court finds of record that at the time of the waiver the indigent person acted with full awareness of his rights and of the consequences of a waiver. In making such a finding, the court shall consider, among other things, such matters as the person's age, education, familiarity with the English language, mental condition, and the complexity of the crime charged. A waiver shall not be allowed in a capital case."

(Note: G.S. 7A-457 was rewritten by Chapter 1243, Session Laws of 1971, effective October 30, 1971.) Material at this stage, is the question whether the judge was correct in holding the defendant was not indigent at the time he made the

State v. Wright

confession and therefore not in a position to invoke the provision of the statute that counsel could not be waived in a capital case. On this question the record discloses the defendant was found to be indigent and counsel was appointed and acted at the preliminary hearing. The same counsel was present and acting when the State sought to introduce the defendant's confession.

[1] The evidence before the trial judge disclosed that the defendant had $5.00 in cash; an automobile on which $56.00 per month was due; and two bonds payable to him and his mother, each of which cost $18.75 and were in his mother's possession in Ohio. On the original application for counsel, the defendant had disclosed his indebtedness of $4,000.00. The question of indebtedness was not raised on the voir dire before Judge Rouse. The stepfather had a salary of $9,000.00 per year with a wife and eleven other children. Any contribution which he might make toward the employment of counsel would have to be borrowed. "My family would have to do without."

On the showing before the trial judge, we hold the evidence was insufficient to support his finding the defendant was not indigent and was able to employ counsel at the time of his confession. When a person is charged with three felonies, one capital, the law says he is entitled to be represented by competent counsel. If he is unable to employ counsel, the court must appoint one to represent him. The representation goes further, much further, than a mere sitting in on the original interrogation. The representation is presumed to continue as long as counsel may be of service in the case. The finding the defendant is not indigent, reversing the original holding, is not supported by the evidence and the conclusion that the defendant was not indigent at the time of his interrogation was error.

The defendant's substantive rights are to be determined by the law in effect at the time the offenses were committed. At the time of the interrogation and confession, the defendant was indigent and was without counsel. Being charged with the capital felony of rape, he could not execute a valid waiver of counsel and, of course, the State could not place in evidence against him an invalid waiver. Otherwise, the provision, "A waiver shall not be allowed in a capital case," is meaningless.

[2] In passing on the question now involved, the Court is not unmindful of former decisions which hold that a certain type of

constitutional right may be waived and a conviction affirmed if the appellate court finds beyond a reasonable doubt that the denial of the right was harmless error. In *State v. Bass,* 280 N.C. 435, 186 S.E. 2d 384, this Court held the presence of counsel at a lineup was a constitutional right, but the in-court identification of Bass was of such independent origin that the absence of counsel at the lineup was harmless beyond a reasonable doubt. In *Bass,* and in other similar cases, all counsel could have done was to see that the lineup was properly "lined up."

The Constitution protects its citizens against forced self-incrimination. This eighteen-year-old Marine, being interrogated by his superiors in the Marine Corps, by the agents of the State Bureau of Investigation, and by the county officers, needed an attorney before making an admission which could lead to the loss of his life. The law of this State said counsel could not be waived.

This case is governed by the rule stated in *State v. Blackmon,* 280 N.C. 42, 185 S.E. 2d 123, rather than by the rule stated in *State v. Bass, supra.* In Blackmon, Justice Dan K. Moore for this Court said:

> "Where, as in the present case, a confession made by the defendant is erroneously admitted into evidence, no one can say what weight and credibility the jury gave the confession. Even though there is other evidence sufficient to support a conviction, we cannot say beyond a reasonable doubt that the error in admitting the confession did not materially affect the result of the trial to the prejudice of the defendant or that it was 'harmless error.' Error in the admission of this evidence requires a new trial."

See also *Chapman v. California,* 386 U.S. 18, 17 L.Ed. 2d 705; *State v. Accor and Moore,* 277 N.C. 65, 175 S.E. 2d 583; and *State v. Gaskins,* 252 N.C. 46, 112 S.E. 2d 745. In the latter case Justice Clifton L. Moore for the Court said: "In the case *sub judice* there was ample evidence to sustain a conviction other than that drawn in question on this appeal. But we have no way of determining what evidence influenced the jury. It may well be that the evidence in question was the deciding factor." The Court ordered a new trial.

For the reasons assigned and on the basis of authorities cited, this Court is required to hold, and now holds, the con-

fession made and signed by the defendant when he was without counsel was inadmissible in evidence against him. His Assignment of Error XVIII is sustained. The defendant is entitled to go before another jury. To that end it is ordered that on all charges there be a

New trial.

Justice LAKE dissenting.

In this case the majority takes a position not required by any decision of the Supreme Court of the United States or by any previous decision of this Court.

There is not the slightest suggestion that the defendant's confession was obtained by coercion, inducement, intimidation or persuasion. Nothing in the record indicates any involuntariness whatsoever. Nothing in the record indicates falsity or the slightest inaccuracy in the confession. There is no indication whatsoever that this eighteen year old Marine, apparently intelligent and not inexperienced, did not understand his right to have counsel present at the interrogation or that he was unaware that, if by reason of indigency he could not obtain counsel, the court would appoint counsel for him. He was expressly so advised, both by the military and by the civilian officers present, before he made the confession. In writing, clear and unmistakable, he stated he did not want counsel "present during this interview."

Subsequently, after he was formally charged and formal judicial proceedings were a certainty, he asserted for the first time that he wanted counsel and that, by reason of his indigency, he was unable to employ such counsel for the proceedings then imminent. Thereupon, counsel for those proceedings was appointed and he has been diligently and ably represented throughout those proceedings, including this appeal, by such counsel.

The trial court found, "The defendant had adequate resources with which to employ counsel at the in-custody interrogation stage of the proceeding in this case." This Court now says that finding is not supported by the evidence and was error.

The evidence is that this eighteen-year-old man had a regular job which paid him $149.00 per month over and above all expense for food, lodging, clothing, medical care and every other

necessary expense. There is no suggestion that he had any dependents. Obviously, the bulk, if not all, of his indebtedness represented the balance due on an automobile owned by him. This Court now says that he was an indigent because he did not have, in ready cash, enough funds to enable him to employ a lawyer, not just for the interrogation proceeding but for his trial, including appeal to the highest court available, and because his family could not help him do so without giving up some other things. If this be indigency, then to be self supporting is a condition rare in this the richest country in the world.

G.S. 7A-450(a) provides: "An indigent person is a person who is financially unable to secure legal representation and to provide all other necessary expenses of representation in an action or proceeding enumerated in this subchapter." Subsection(c) provides: "The question of indigency may be determined or redetermined by the court at any stage of the action or proceeding at which an indigent is entitled to representation."

Indigency, at least in this sense, means financial inability to employ the legal assistance needed at the time. Surely, we may take judicial notice of the fact that a relatively small fee would be charged by competent counsel for appearance at a police investigation. This is all the defendant needed at that time. With full knowledge of his right to such counsel, and without the slightest suggestion of his inability to employ such counsel, he elected to represent himself. No one has suggested that he was coerced, intimidated or induced to reach that decision. When a suspected criminal, known to have the above mentioned employment and income, does not even suggest to the officers interrogating him that he is an indigent but expressly tells them he does not want counsel present, why must the officers inquire further into his financial condition?

Assuming this defendant was an indigent, within the meaning of G.S. 7A-457, for the purposes of the police interrogation, this statute does not declare that evidence obtained in disregard of it is not admissible. Neither *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694, nor *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081, nor any other decision of the Supreme Court of the United States which has come to my attention holds that state courts may not admit evidence obtained in violation of a state statute. The effect of those cases

is limited to the admissibility of evidence obtained in violation of the defendant's rights guaranteed by the Federal Constitution. No denial of any such constitutional right is involved in this case. Consequently, the admissibility of this defendant's voluntary confession must be determined by the law of this State.

We have held repeatedly that the common law of North Carolina does not forbid the admission of evidence unlawfully obtained but otherwise competent. *State v. Colson,* 274 N.C. 295, 305, 163 S.E. 2d 376, cert. den., 393 U.S. 1087, 89 S.Ct. 876, 21 L.Ed. 2d 780; *State v. Smith,* 251 N.C. 328, 111 S.E. 2d 188; *State v. Vanhoy,* 230 N.C. 162, 52 S.E. 2d 278; *State v. McGee,* 214 N.C. 184, 198 S.E. 616. See also: Stansbury, North Carolina Evidence, 2d Ed., § 121; Wigmore on Evidence, 3d Ed., §§ 2183-2184a; McCormick on Evidence, § 137; 29 AM. JUR. 2d, Evidence, § 408. In *State v. McGee, supra,* this Court refused to extend, to evidence obtained by a search without any warrant at all, a statute declaring incompetent evidence obtained by a search under an illegally issued warrant. Pursuant to the rule so established, we should not interpolate into G.S. 7A-457 a change in the rules so established in this State.

If, however, G.S. 7A-457 should be construed as a legislative declaration that a voluntary confession made under the circumstances of this case is not admissible, the statute should not be given that effect because the statute, itself, is an unconstitutional enactment. The State had no opportunity to raise this question since the lower court ruled in its favor on the question of the admissibility of the confession. In *State v. Bines,* 263 N.C. 48, 138 S.E. 2d 797, this Court said, "The constitutional right to counsel, of course, does not justify forcing counsel upon an accused who wants none." To the same effect are: *State v. Morgan,* 272 N.C. 97, 157 S.E. 2d 606, and *State v. McNeil,* 263 N.C. 260, 139 S.E. 2d 667, and in *State v. Williams,* 276 N.C. 703, 174 S.E. 2d 503, this Court affirmed a death sentence imposed upon a defendant tried without counsel, pursuant to his declaration that he did not want counsel. All of these cases involved a defendant who elected to proceed without counsel through the formal trial of the charge against him. If a defendant may not be denied the right to do that, surely he may not be denied the right to represent himself at a police interrogation prior to the filing of a formal charge against him. Having

elected to do so, voluntarily and with full knowledge of his rights, he should not now be given a new trial because he so elected and confessed to the offense charged.

Furthermore, G.S. 7A-450 et seq. is invalid in that it discriminates between indigent and non-indigent defendants. If this defendant, at the time of the police interrogation, had had in his pocket $10,000 in cash and had been free from debt the majority would apparently hold he had the right to represent himself at the police interrogation and the confession would be held properly admitted. Neither intelligence, education, nor skill in matters of police or courtroom procedure has any relation to the amount of money one has in his pocket or in a bank account. Neither the Legislature nor the courts of this State may make the right to represent one's self without counsel depend upon such a circumstance.

Justices HUSKINS and MOORE join in this dissenting opinion.