STATE OF NORTH CAROLINA v. CHARLES E. MEMS

No. 2

(Filed 31 July 1972)

1. **Criminal Law § 146— unconstitutionality of statute — issue raised first time on appeal**
   Where defendant relies on a statute for the first time on appeal, the State is not precluded from raising the issue of the constitutionality of the statute for the first time on appeal.

2. **Criminal Law § 146— constitutionality of statute — grounds of appeal**
   A statute will not be declared unconstitutional if the appeal can be determined on another ground.

3. **Criminal Law § 162— incompetent evidence — admission with no objection**
   Admission of incompetent evidence, without objection, is not ground for a new trial, except when use of the evidence is precluded by a statute enacted in furtherance of public policy.

4. **Criminal Law § 162— in-court identification of defendant — objection — voir dire — failure to renew objection**
   When defendant objected to a proposed in-court identification of himself, a *voir dire* examination was conducted, with the court holding that such testimony would be competent, whereupon defendant excepted; however, when the jury returned and the testimony was heard, defendant did not renew his objection, but such renewal was not necessary to preserve the question for appellate review, though renewal would have been the better practice.

State v. Mems

5. **Constitutional Law § 32— right to counsel — when it attaches**

A person's right to counsel under the Sixth and Fourteenth Amendments attaches only after adversary judicial proceedings have been initiated against him.

6. **Constitutional Law § 32— right to counsel — police lineup — waiver of counsel**

Where a lineup is held only two or three hours after an offense is committed and no indictment has been sought or returned, no formal charge has been made, no warrant has been issued and no preliminary hearing has been set, a lineup which is not unnecessarily suggestive and conducive to irreparable mistaken identification is merely a step in the police investigatorial process and a defendant, having been given a full *Miranda* warning, may voluntarily waive his Sixth and Fourteenth Amendment right to counsel.

7. **Constitutional Law § 4— standing to challenge constitutionality of statute**

The unconstitutionality of a statute may be asserted only by a litigant adversely affected by the statute, but the State is such a litigant when the declaration of the validity of a statute will defeat the State's right to introduce otherwise competent and vitally important evidence, and so, its right to carry out the judgment which it has obtained against the defendant in the superior court.

8. **Criminal Law § 66— findings of fact conclusive**

Findings of fact made by the trial judge, being fully supported by the evidence on *voir dire,* are conclusive.

9. **Constitutional Law § 32— right to counsel — waiver**

The defendant in a criminal proceeding, whether it is a trial or pre-trial police lineup, has a right to handle his own case without interference by, or the assistance of, counsel forced upon him against his wishes.

10. **Constitutional Law §§ 20, 32— equal protection — waiver of counsel — discrimination between indigent and affluent**

G.S. 7A-457(a) makes an unconstitutional discrimination between indigent defendants and defendants having enough funds to pay for counsel, as it forbids waiver of counsel by an indigent, but leaves untouched the right of one who is affluent to waive counsel.

11. **Constitutional Law §§ 20, 32— equal protection — waiver of counsel — basis for classification**

Indigency is a sufficient basis for classification with reference to the right to court appointed, publicly paid counsel, but it is not a reasonable basis for classification as to the right to represent one's self.

12. **Constitutional Law § 20— equal protection — reasonableness of classification**

When a special class of persons is singled out by the Legislature for special treatment, there must be a reasonable relation between the classification and the object of the statute.

**13. Constitutional Law § 32— right to counsel — indigent defendant — waiver of counsel**

      G.S. 7A-457(a), the statutory provision in effect at the time of defendant's trial, prohibiting an indigent from making any waiver of counsel in a capital case, is unconstitutional.

    Chief Justice BOBBITT concurring in result.

    Justices HIGGINS and SHARP join in concurring opinion.

APPEAL by defendant from *Godwin, J.,* at the 26 April 1971 Criminal Session of CUMBERLAND.

By an indictment, proper in form, the defendant was charged with the rape of Mrs. Sharon Machamer. The jury returned a verdict of guilty with a recommendation that the defendant's punishment be imprisonment for life. From a sentence imposed in accordance with the verdict, the defendant appeals. He was represented at the trial and on appeal by the Public Defender.

Mrs. Machamer testified concerning the details of the offense, which occurred at her trailer home in Fayetteville shortly after 12:30 p.m. on 2 March 1971. At the time, she was alone in her home save for her two infant children, her husband having gone to work in the early morning. Her assailant, whom she had observed in the vicinity about an hour earlier, entered her home and, upon being ordered by her to leave, struck her several times about the head and arms as she resisted him, then forced her into the bedroom, bound her hands and twice committed the offense, together with an unnatural sexual act, stating that he would not kill her and the children if she did what he wanted her to do. He was a Negro, about six feet in height and in his early twenties, dressed in dark colored pants and a navy blue "sweat type jacket" with the hood pulled up so that his eyes, nose and mouth alone were visible. Upon his departure she notified the police. Upon their arrival she described her assailant to them. At the trial she identified a blue sweat shirt (State's Exhibit 1) and a pair of green trousers (State's Exhibit 2) as those worn by her assailant. At the time of the offense, and for a considerable period prior thereto, a steady rain was falling.

Early in Mrs. Machamer's testimony the defendant objected to a proposed in-court identification by her of the defendant as her assailant. The court thereupon conducted an ex-

State v. Mems

tensive voir dire. At its outset defendant's counsel suggested to the court that two other witnesses for the State, Mrs. Lora Boras and Mrs. Josefa Williams, might be asked by the solicitor to make in-court identifications of the defendant as the man they had seen in the vicinity of the Machamer trailer at the time of the offense and, if so, the defendant would object on the ground that their identifications, like that of Mrs. Machamer, were tainted by a prior unlawful lineup, this being a different lineup from that in which Mrs. Machamer made her identification. The court thereupon, on voir dire, heard evidence as to the competency of in-court identifications by all three of these witnesses.

At the conclusion of the voir dire, the court made full findings of fact and ordered:

"1. That defendant's objection to an in-court identification of the defendant by Mrs. Machamer as her assailant be, and the same is, sustained.

"2. That the defendant's objection to an in-court identification of the defendant by Mrs. Boras and Mrs. Williams, as the man they saw walking along the street in the rain in the neighborhood of their home and that of Mrs. Machamer, about mid-day on March 2, 1971, will be overruled and that such evidence will, if ordered, be received in evidence in defendant's trial."

To this order the defendant excepted. Thereupon, the jury returned to the courtroom and Mrs. Machamer's testimony, as above related, proceeded without objection. Mrs. Boras and Mrs. Williams then testified, without further objection.

Mrs. Boras and Mrs. Williams each identified in court the defendant as the Negro man she saw walking about her own trailer home, across the street from that of Mrs. Machamer, immediately prior to and after the assault. Each testified that, at a lineup conducted by the police on the afternoon of the offense, she observed and identified the defendant as the man she had so seen. The six men in the lineup were Negroes of about the same size and age. None of them was then wearing either a blue hooded sweat shirt or green pants such as those worn by the man she observed in the vicinity of the Machamer trailer. Each witness identified the hooded sweat shirt (State's Exhibit 1) as the one worn by the man so observed by her at

the trailer. Mrs. Williams likewise identified the green pants (State's Exhibit 2). These were the same garments identified by Mrs. Machamer as those worn by her assailant and by police officers as those taken by them from the defendant. Both Mrs. Boras and Mrs. Williams also identified shoes (State's Exhibit 3), taken from the defendant at the time of his arrest, as those worn by the man observed by them in the vicinity of the Machamer trailer. Mrs. Williams testified that she saw the man enter the Machamer trailer and leave it approximately half an hour later, that she followed him in her automobile after he left the Machamer trailer and, upon the arrival of the police a few minutes later, told them what she had seen.

Approximately one hour after the offense, police officers went to the home of the defendant and found him there with his mother. They arrested him "for investigation of rape," giving him the full Miranda warning. At that time the defendant was wearing the pair of green pants and the shoes identified by the women (State's Exhibits 2 and 3). The pants were quite wet. He told the officers he had been out of the house approximately one hour before their arrival and had then been wearing a pair of brown pants and a dark blue sweat shirt, both of which he handed to the officers, the sweat shirt being the one identified by Mrs. Machamer, Mrs. Boras and Mrs. Williams (State's Exhibit 1). It was "soaking wet" when handed to the officers by the defendant in his home, but the brown pants were dry.

The defendant did not testify. He offered witnesses in his behalf whose testimony was to the effect that he was at a Fort Bragg field house four or five miles from the Machamer trailer at the time Mrs. Machamer's assailant was observed walking about and entering her trailer. One of them testified that he then saw the defendant playing baseball, the other that he then saw him playing basketball and that the defendant, between 12:30 p.m. and 12:45 p.m., "signed out" from the witness a pair of basketball shoes. The second man was not called at the trial to testify in person and so was not cross-examined. Due apparently to his absence on military duty, his affidavit, dated 9 March 1971, was received in evidence, it being stipulated that he would so testify if present.

The defendant did not offer in evidence any document showing such "signing out" of the shoes by him on 2 March 1971 and there is nothing in the record to indicate that, at the

State v. Mems

time of his arrest (less than two hours after he was so said to have been playing either baseball or basketball at the field house), he mentioned this circumstance to the arresting officers or that he otherwise called it to the attention of the police or of the solicitor prior to the introduction of the evidence at his trial.

The defendant's mother and his girl friend testified that, approximately an hour before Mrs. Machamer's assailant was observed walking about the trailers, the defendant left home wearing "brownish" or "goldish-tan" pants. His mother testified that he was still wearing these when he returned home shortly before the arrival of the officers, that he did not again go out because of the rain, and that the green pants he was wearing when the officers arrived were dry.

The State offered in rebuttal two witnesses who lived in the vicinity of the defendant. The first testified that she saw him with his girl friend at the bus stop approximately an hour before the offense. He was then wearing dark green pants and a blue jacket with a hood, these being similar in appearance to the State's Exhibits 1 and 2. She again saw him walking along the street in front of her home "heading toward town," about 12:30 p.m., this being the same time his witnesses said he was playing either baseball or basketball at the field house four or five miles away. He then had the hood of the jacket pulled up around his head, just as did Mrs. Machamer's assailant. The other rebuttal witness testified that she, too, saw the defendant at approximately 12:30 p.m. walking along the street near her home with the hood of his sweat shirt pulled up over his head.

After all the evidence was in, on motion of the defendant, the voir dire examination into the question of the lineup, at which Mrs. Boras and Mrs. Williams identified the defendant, was reopened. Upon the original voir dire hearing, at which the defendant elected not to testify, the evidence was that, prior to the lineup, the defendant was fully advised of his constitutional rights. He having said he wanted a lawyer at the lineup, the officers sent for one, but, prior to the lawyer's arrival, the defendant voluntarily signed a written waiver of counsel and the lineup proceeded without the presence of counsel.

Upon the reopening of the voir dire, the defendant called Attorney Joe Brown Chandler, Jr., who testified that he was in the district courtroom when the sheriff advised him there was a man in the Detective's Bureau in the basement of the courthouse who was requesting an attorney. Thereupon Mr. Chandler went to the Detective's Bureau. Upon his arrival the lineup was in progress. He was immediately informed by the officers that the suspect, the defendant, had changed his mind and did not want the services of an attorney. Thereupon, Mr. Chandler took no part in the lineup procedure but observed that all the persons in the lineup were Negro males of about the same weight and height, all were dressed in casual clothing with nothing remarkable about their dress and that nothing abnormal or constituting an infringement of the defendant's rights in the formation of the lineup was apparent.

The defendant's counsel then stated his desire to call the defendant for the purpose of testifying on this resumption of the voir dire. The court refused to permit the defendant to so testify for the reason that he had been present at the original voir dire hearing and had then chosen not to testify.

At the conclusion of this resumption of the voir dire, the court stated it would not disturb its former ruling. To this the defendant objected and excepted.

Following the charge by the court, to which the defendant took no exception, the jury returned and announced its verdict. Thereupon, the defendant's counsel announced that he desired to make a motion "before the verdict is finally received." The motion was one for a mistrial on the ground of alleged improprieties by members of the jury during the course of the trial. The court immediately conducted an extensive hearing and, finding there had been no such irregularities, denied the motion. The court then polled the jury. Each juror having replied that he or she still assented to the verdict of guilty with the recommendation that the punishment be life imprisonment, the court accepted the verdict and imposed sentence accordingly.

*Attorney General Morgan, Deputy Attorney General Bullock, and Associate Attorney Conely for the State.*

*James Godwin Taylor, Assistant Public Defender, for defendant.*

LAKE, Justice.

The defendant has argued upon his appeal eight assignments of error. We have considered each carefully and find no merit in any of them. The only one meriting detailed discussion is that the trial judge erred in failing to grant the defendant's motion to suppress the in-court identifications of the defendant by Mrs. Boras and Mrs. Williams.

In his brief, the defendant asserts:

> "Under North Carolina law in effect at the time of the present lineup the defendant was clearly, unequivocally entitled to the services of counsel at the lineup. He was guaranteed this right by Article 36 of Chapter 7A of the General Statutes of North Carolina and could not waive this right. The provisions of NCGS 7A-457(a) prohibit his waiver of right to counsel at any critical stage of the proceedings in a capital case. A lineup such as that conducted here is such a critical stage of the proceedings. NCGS 7A-451(b)(1). See *State v. Lynch*, 279 N.C. 1, 181 S.E. 2d 561 (1971) and *State v. Chance*, 279 N.C. 643 (1971)."

[1] Nothing in the record indicates that in the superior court the defendant relied upon the provision in G.S. 7A-457(a), "A waiver shall not be allowed in a capital case." On the contrary, all the examination on voir dire related only to whether the lineup was impermissibly suggestive and to whether his written waiver of counsel was made with full knowledge of the surrounding circumstances. It was not until the defendant filed his brief in this Court that he advanced the contention that his waiver of counsel at the lineup was ineffective by reason of this provision in G.S. 7A-457(a). The State, in its brief, asserts that this attack must fail because this provision of the statute is unconsitutional.

The State had no opportunity to attack the constitutionality of this statutory provision in the lower court. Its evidence was admitted by the lower court. There was no contention therein that this provision of the statute made the evidence incompetent. Thus, the State's contention as to its invalidity is not barred from our consideration by the familiar rule to the effect that a question as to the constitutionality of a statute may not be raised for the first time in this Court when the party raising

it could have done so in the lower court. See: *Lane v. Insurance Co.,* 258 N.C. 318, 128 S.E. 2d 398; *Pinnix v. Toomey,* 242 N.C. 358, 87 S.E. 2d 893; *Baker v. Varser,* 240 N.C. 260, 82 S.E. 2d 90; *Phillips v. Shaw, Comr. of Revenue,* 238 N.C. 518, 78 S.E. 2d 314; 16 AM. JUR. 2d, Constitutional Law, § 115; 16 C.J.S., Constitutional Law, § 96b. The reason for this rule is that a litigant's failure to make a timely assertion of his constitutional right is deemed a waiver of it. See: *Yakus v. United States,* 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834; *Oklahoma v. Civil Service Commission,* 330 U.S. 127, 67 S.Ct. 544, 91 L.Ed. 794; *State v. Gaiten,* 277 N.C. 236, 176 S.E. 2d 778. It has no application where, as here, the statutory provision in question is injected into the litigation for the first time in the appellate court.

[2]   The State also contends in its brief that the defendant failed to object to the testimony in question when it was offered before the jury and, therefore, may not now assert that its admission constituted reversible error. If this were correct, we would not reach on this appeal the constitutional question raised by the State, for it is also a well established rule that a statute will not be declared unconstitutional if the appeal can be determined on another ground. *State v. Blackwell,* 246 N.C. 642, 99 S.E. 2d 867; *Fox v. Commissioners of Durham,* 244 N.C. 497, 94 S.E. 2d 842; *State v. Jones,* 242 N.C. 563, 89 S.E. 2d 129; *In Re Parker,* 209 N.C. 693, 184 S.E. 532; 16 AM. JUR. 2d, Constitutional Law, § 113.

[3, 4]   The admission of incompetent evidence, without objection, is not ground for a new trial, except when use of the evidence is precluded by a statute enacted in furtherance of public policy. *Reeves v. Hill,* 272 N.C. 352, 158 S.E. 2d 529; Stansbury, North Carolina Evidence 2d, § 27. We do not now need to determine whether, by reason of G.S. Chapter 7A, Article 36, the testimony of the witnesses here in question falls within the exception to this rule. While there was no objection made at the moment that Mrs. Boras and Mrs. Williams testified before the jury, the record shows clearly that, in the course of the voir dire examination resulting from his objection to a proposed in-court identification of him by Mrs. Machamer, the defendant also brought to the attention of the court his objection to any testimony by Mrs. Boras and Mrs. Williams identifying him as the man seen by them. Thereupon, the voir dire examination was expanded and the court ruled that such testi-

State v. Mems

mony would be competent. The defendant excepted. The jury then returned to the courtroom and the testimony was immediately offered and received. While it would have been the better practice for the defendant then to have renewed his objection, we think that, under these circumstances, it was not necessary for him to do so in order to preserve the question for appellate review.

[5, 6] There is nothing in the record to indicate a violation of the defendant's constitutional rights in the admission of this evidence. It is now established that "a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him," and the rule of *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed. 2d 1149, and *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed. 2d 1178, is limited to lineups conducted after "the onset of formal prosecutorial proceedings." *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed. 2d 411, 40 Law Week 4607. The lineup here in question was held only two or three hours after the offense was committed. The defendant was in custody "for investigation of rape," but no indictment had been returned or even sought, no formal charge had been lodged against him, no warrant had been issued and no preliminary hearing had been set. The lineup was merely a step in the police investigatorial process. All of the evidence compels the finding that there was nothing in the lineup procedure which made it "unnecessarily suggestive and conducive to irreparable mistaken identification" so as to violate the defendant's rights under the Due Process Clause of the Fifth and Fourteenth Amendments, as construed in *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed. 2d 1199, and *Foster v. California*, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed. 2d 402. Furthermore, the record shows clearly that the defendant, after being given the full warning required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694, with full understanding of his constitutional right to counsel, waived it voluntarily. This he may do. *Miranda v. Arizona, supra.*

The defendant's assignment of error must, therefore, fail unless it is supported by Article 36, Chapter 7A of the General Statutes. G.S. 7A-451, which is part of that article, provides that an indigent person is entitled to services of counsel in "any felony case," which entitlement begins as soon as feasible

after he is taken into custody and "continues through any critical stage of the action or proceeding, including * * * a *pretrial* identification procedure at which the presence of the indigent is required * * *." (Emphasis added.) G.S. 7A-452 provides, "Counsel for an indigent person shall be assigned by the court," except that a public defender may tentatively assign himself or his assistant to represent an indigent person, subject to subsequent approval by the court. G.S. 7A-453 provides that if a defendant, taken into custody in a district which has a public defender, "states that he is indigent and desires counsel, the authority having custody shall immediately inform the defender" who shall make a preliminary determination as to the person's entitlement to his services, and "proceed accordingly." G.S. 7A-457(a), prior to the 1971 Amendment which has no application to this appeal, provided:

"(a) An indigent person who has been informed of his rights under this subchapter may, in writing, waive any right granted by this subchapter, if the court finds of record that at the time of the waiver the indigent person acted with full awareness of his rights and of the consequences of a waiver. In making such a finding, the court shall consider, among other things, such matters as the person's age, education, familiarity with the English language, mental condition, and the complexity of the crime charged. *A waiver shall not be allowed in a capital case.*" (Emphasis added.)

This was a capital case. The trial court found:

"16. That at the time of his arrest at his home in Fayetteville during the afternoon of March 2, 1971, the defendant was advised of his constitutional rights as required by Miranda.

"17. That after he reached the courthouse in custody of Sheriff's Officers, following his arrest, he was advised that Sheriff's Officers desired to establish a lineup of several men to be viewed by Mrs. Machamer and other witnesses in order that they might determine if they could identify the defendant as a person seen by them earlier that day in the neighborhood of the Machamer mobile home, and that he was entitled to be represented by counsel in connection with the lineup; that if he was unable to employ counsel, counsel would be appointed for him without ex-

pense to him; that thereupon the defendant advised the Sheriff's Officer that he wished to have counsel present with him at the time of the lineup;

"18. That Sheriff's Officers agreed to see that legal counsel was furnished to him without expense to him, and that they began to search for an attorney to be present and represent the defendant in connection with the lineup;

"19. That before the arrival of counsel and before the lineup was made up, the defendant changing his mind, advised Sheriff's Officers that he did not desire to be represented by counsel in connection with the lineup and that he waived his right to counsel in writing."

The trial court thereupon concluded:

"4. That the defendant knowingly and intentionally waived his right to be represented by legal counsel in connection with the aforesaid lineup."

These findings and this conclusion of the trial court comply with the requirements of G.S. 7A-457. The competency of the testimony, therefore, turns upon the validity of the provision in G.S. 7A-457(a), *"A waiver shall not be allowed in a capital case."* (Emphasis added.)

Effective 30 October 1971, subsequent to the trial of this defendant, the Legislature rewrote Section 7A-457 and eliminated therefrom the provision prohibiting waiver of counsel by an indigent defendant in a capital case, insofar as out-of-court proceedings are concerned. Such rewriting of the statute has no effect upon this appeal and we are not here concerned with the validity of any provision of the statute as rewritten.

[7] It is well settled that the unconstitutionality of a statute may be asserted only by a litigant who is adversely affected by the statute. *Nicholson v. Education Assistance Authority,* 275 N.C. 439, 168 S.E. 2d 401; *D&W, Inc. v. Charlotte,* 268 N.C. 577, 151 S.E. 2d 241; *Charles Stores v. Tucker,* 263 N.C. 710, 140 S.E. 2d 370. In this case, the State is a party litigant. Its right to introduce evidence, otherwise competent and vitally important to its case, and so, its right to carry out the judgment which it has obtained against the defendant in the superior court will be defeated if this provision of G.S. 7A-457(a), before the 1971 revision, is valid and is given the effect for which

State v. Mems

the defendant contends. Thus, the State has standing to raise the question of the constitutional validity of this statutory provision.

[8] The findings of fact made by the trial judge, being fully supported by the evidence on voir dire, are conclusive. *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1, cert. den., 386 U.S. 911; *State v. Barnes,* 264 N.C. 517, 142 S.E. 2d 344; *State v. Chamberlain,* 263 N.C. 406, 139 S.E. 2d 620; *State v. Outing,* 255 N.C. 468, 121 S.E. 2d 847, cert. den., 369 U.S. 807, 82 S.Ct. 652, 7 L.Ed. 2d 555. It is, therefore, established, for the purposes of this appeal, that the defendant, after being fully advised of his right to counsel at the lineup, knowingly, understandingly and voluntarily waived that right in writing. Unless the above quoted prohibition of such waiver in G.S. 7A-457 requires a different conclusion, he may not now assert the absence of counsel at the lineup as ground for a new trial. If that provision of the statute, in effect at the time of his trial, was valid, he must be given a new trial. The admission of the testimony of Mrs. Boras and Mrs. Williams positively identifying him as the man they saw walking about and entering the Machamer trailer immediately prior to the offense cannot be deemed harmless, notwithstanding the presence of other testimony sufficient to support the jury's verdict.

Under the circumstances of this case, it would make no difference had the attorney summoned by the sheriff actively participated in and approved the manner of conducting the lineup. This attorney was not chosen or accepted by the defendant. He was not appointed by the court. Nothing in the record indicates that he was a member of the staff of the Public Defender. He was not designated by the Public Defender to represent the defendant. He was simply selected by the police officers who had no authority, by statute or otherwise, to select an attorney for the defendant in the absence of the defendant's acquiescence in the selection.

The defendant's statutory right to have the services of duly appointed counsel at this lineup conducted prior to the inception of prosecutorial proceedings is not here in question. He voluntarily and understandingly waived that right in writing. The only question for us to determine is the validity of the statutory provision denying him the right to waive it.

[9] This Court has repeatedly held that the defendant in a criminal proceeding has a right to handle his own case without

interference by, or the assistance of, counsel forced upon him against his wishes.

In *State v. McNeil*, 263 N.C. 260, 267-268, 139 S.E. 2d 667, Justice Parker, later Chief Justice, said:

"The United States Constitution does not deny to a defendant the right to defend himself. Nor does the constitutional right to assistance of counsel justify forcing counsel upon a defendant in a criminal action who wants none. *Moore v. Michigan*, 355 U.S. 155, 2 L.Ed. 2d 167; *Carter v. Illinois*, 329 U.S. 173, 91 L.Ed. 172; *United States v. Johnson*, 6 Cir. (June 1964), 333 F. 2d 1004."

In *State v. Bines*, 263 N.C. 48, 138 S.E. 2d 797, Justice Higgins said:

" 'The constitutional right (to counsel), of course, does not justify forcing counsel upon an accused who wants none.' *Moore v. Michigan* [supra]; *Herman v. Claudy*, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126."

In *State v. Morgan*, 272 N.C. 97, 157 S.E. 2d 606, this Court said:

"Having been fully advised by the court that an attorney would be appointed to represent him if he so desired, he [the defendant] had the right to reject the offer of such appointment and to represent himself in the trial and disposition of his case."

In *State v. Williams*, 276 N.C. 703, 174 S.E. 2d 503, this Court affirmed a death sentence imposed for murder in the first degree upon a defendant who was tried without counsel, pursuant to his declaration that he did not want counsel. Our decision was reversed by the Supreme Court of the United States, but upon another ground and without mention of the defendant's having been tried without counsel.

In *United States v. Plattner*, 330 F. 2d 271 (2nd Circuit 1964), the judgment of the trial court was reversed and the matter remanded because the defendant "expressed the desire to be his own counsel," but the trial court "thereupon appointed counsel from Legal Aid to represent him because petitioner was not schooled in the law." The Court of Appeals, speaking through Circuit Judge Medina, said:

"As we hold that a defendant on the trial of a criminal case, including a *coram nobis* proceeding at which the defendant is present and witnesses are to be examined and cross-examined, has a right to conduct and manage his own case *pro se,* we reverse the order appealed from and remand the case. Moreover, we hold the right to act *pro se* as above stated is a right arising out of the Federal Constitution and not the mere product of legislation or judicial decision. * * *

"Under the Fifth Amendment, no person may be deprived of liberty without due process of law. Minimum requirements of due process in federal criminal trials are set forth in the Sixth Amendment. * * * Implicit in both amendments is the right of the accused personally to manage and conduct his own defense in a criminal case."

Also declaring that the right of a defendant to represent himself in a criminal proceeding is a constitutional right are: *Lowe v. United States,* 418 F. 2d 100 (7th Circuit 1969), cert. den., 397 U.S. 1048, and *United States v. Sternman,* 415 F. 2d 1165 (6th Circuit 1969), cert. den., 397 U.S. 907, rehear. den., 397 U.S. 1081.

[9]  It not infrequently happens that a defendant is dissatisfied with the counsel appointed for him by the court. While he may not insist that the court appoint a different counsel to represent him, the defendant has the right to insist that his case not be handled by an attorney in whom he has no confidence. If he so desires, he has the right, in that situation, to represent himself. In this there is no distinction between a capital case and any other case. See *State v. Williams,* supra. If he may represent himself, as we there held, through the intricacies of an actual trial, he surely has the right to look after his own interest at a police lineup free from threats, duress and unduly suggestive indications that he is the person the police desire to have selected by the viewer. This right the Legislature may not deny a defendant, be he indigent or affluent.

[10]  Furthermore, G.S. 7A-457 makes an unconstitutional discrimination between indigent defendants and defendants having enough funds to pay for counsel. The statute forbids waiver of counsel by an indigent, but leaves untouched the right of one who is affluent to waive counsel in any case, capital or otherwise.

Let us suppose that two individuals are arrested jointly by the police under suspicion that together they committed a capital crime. One is indigent, the other affluent. The arrest occurs late in the evening. Both protest their innocence. Both are transients, passing through the community. The officers offer them the opportunity to appear in a lineup conducted without any unduly suggestive procedures. With the above quoted provision of G.S. 7A-457 (a) in effect, the suspect with enough money in his pocket to employ counsel may, if he so desires, accept the offer and, if not identified, proceed on his way. The indigent suspect, equally willing, must remain in custody until counsel can be appointed by the court or the Public Defender, if any, can be located and brought to observe the lineup. Neither the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, Article I, Section 19 of the present Constitution of North Carolina, nor Article I, Section 17 of the Constitution of North Carolina, as it read at the time of this defendant's trial, permit such discrimination.

[11, 12]　Indigency is obviously a sufficient basis for classification with reference to the right to court appointed, publicly paid counsel, but it is not a reasonable basis for classification as to the right to represent one's self. Poverty is not synonymous with lack of intelligence or even with limited education, and possession of funds does not necessarily mean possession of good judgment or of knowledge of legal procedure. When a special class of persons, such as indigents, is singled out by the Legislature for special treatment, there must be a reasonable relation between the classification and the object of the statute. *Quaker City Cab Co. v. Pennsylvania,* 277 U.S. 389, 48 S.Ct. 553, 72 L.Ed. 927; *Power Manufacturing Co. v. Saunders,* 274 U.S. 490, 47 S.Ct. 678, 71 L.Ed. 1165; *State v. Glidden Co.,* 228 N.C. 664, 46 S.E. 2d 860; 16 Am. Jur. 2d, Constitutional Law, § 501. The purpose of the statutory provision for appointment of counsel, at public expense, for indigent defendants is to put indigent defendants on an equality with affluent defendants in trials upon criminal charges. To deny, or to restrict the right of the indigent to waive counsel, i.e., to represent himself, while permitting the affluent defendant to exercise such right, has no reasonable relation to the objective of equal opportunity to prevail at the trial of the case. Such classification is beyond the power of the Legislature.

[13]   We, therefore, hold that the provision which appeared in G.S. 7A-457(a) at the time of the defendant's trial, "A waiver shall not be allowed in a capital case," is unconstitutional and of no effect. It follows that the defendant's Assignment of Error No. 1, to the failure of the court to grant his motion to suppress the in-court identifications by Mrs. Boras and Mrs. Williams, is without merit and must be overruled.

No error.

Chief Justice BOBBITT concurring in result.

The court found that defendant had knowingly and intentionally waived *in writing* his right to be represented by counsel at the lineup at which Mrs. Boras and Mrs. Williams identified him.

The lineup was on March 2, 1971, the date the crime was committed. G.S. 7A-457(a) *then* provided that waiver of counsel by an indigent person "shall not be allowed in a capital case."

Whether a nonindigent person could have successfully contended that he was entitled to the same protection it purported to confer on an indigent person is not presented. I do not share the view that the State's counsel have standing to challenge as unconstitutional a right which the General Assembly saw fit to confer on an indigent person.

Defendant, an indigent, relies upon this provision of G.S. 7A-457(a) and was in fact represented by counsel in all in-court proceedings. I do not share the view that the State's counsel have standing to challenge this statutory provision as unconstitutional on the ground that some other indigent defendant *may assert* his constitutional right to *refuse* representation by counsel. This case involves a waiver of the right to counsel, not the right *to refuse* representation by counsel.

My concurrence in result is on a different basis. As used in G.S. 7A-457(a), a "capital case" is a criminal prosecution for a crime which is or may be punished by death. Under the June 29, 1972, decision of the Supreme Court of the United States in *Furman v. Georgia*, 408 U.S. 238, 33 L.Ed. 2d 346, 92 S.Ct. 2726, punishment by death is not permissible under statutory provisions such as those incorporated in North Caro-

lina statutes. By its decision in *Furman,* the Supreme Court invalidated and rendered obsolete that portion of G.S. 7A-457 (a) which related solely to a "capital case."

Justices HIGGINS and SHARP join in this concurring in result opinion.