IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-83

Filed 18 March 2026

Brunswick County, Nos. 21CR051242-090, 21CR051243-090, 21CR051244-090, 21CR051240-090, 21CR051241-090

STATE OF NORTH CAROLINA

v.

THOMAS DAVIS INGRAM, JR.

Appeal by defendant from judgment entered 28 September 2023 by Judge C. Ashley Gore in Brunswick County Superior Court. Heard in the Court of Appeals 24 February 2026.

*Attorney General Jeff Jackson by Special Deputy Attorney General John F. Oates, Jr., for the State.*

*Appellate Defender Glenn Gerding by Assistant Appellate Defender David W. Andrews, for the defendant-appellant.*

TYSON, Judge.

Thomas Davis Ingram, Jr. ("Defendant") appeals from judgments entered after the trial court found him guilty following a bench trial of fifteen counts of first-degree sex offense with a child and fifteen counts of indecent liberties with a child. We affirm in part, vacate in part, and remand for resentencing.

## I. Background

Defendant was a member of the United States Marine Corps. He was stationed

at Beaufort, South Carolina when he met the complainant's mother ("Mother"). Mother lived with complainant, L.C., in Calabash. (pseudonym used to protect the identity of minor). L.C. was born in 2004.

Defendant was transferred to Marine Corps Base Camp Lejeune. Defendant and Mother began dating in the summer of 2010 and were married soon thereafter. Defendant moved into Mother's and L.C.'s home in 2011, and he commuted to Camp Lejeune. While Mother worked, Defendant would drop off and pick up L.C. Defendant would help L.C. with schoolwork, read her a story, and put her to bed.

L.C. alleged Defendant would get into bed with her and "spoon", while purportedly rubbing her vagina with his fingers. L.C. also alleged Defendant inserted his fingers into her vagina on several occasions. L.C. further alleged Defendant rubbed his penis against her back, rubbed her breasts, and touched her vagina, while they were playing the Monopoly board game.

Defendant separated from Mother in 2014. Defendant continued to live in Mother's home in Calabash while the marriage broke down.

L.C. told her boyfriend about Defendant's alleged abuses upon returning home from a church retreat in Tennessee in 2019. L.C. told her boyfriend not to tell anyone. L.C. also told her female friend about the alleged incidents and asked her not to tell anyone.

L.C. was attending virtual school due to the COVID-19 pandemic on 22 January 2021. L.C. was upset and did not want to get out of her bed. Mother asked

L.C. to tell her what was wrong. The same evening, L.C. told Mother about the alleged abuses. Mother called 911. L.C. spoke with a deputy from the Brunswick County Sheriff's Office and was taken to a child advocacy center. Defendant was arrested in March 2021.

Defendant was indicted with twenty-four counts of sex offense by an adult with a child. Defendant's appointed counsel, Dustin Sullivan, was allowed to withdraw on 10 November 2021. The court then appointed attorney Michael Ramos as counsel.

Defendant moved the court to discharge Ramos as his counsel and to proceed *pro se* on 12 December 2022. The trial court conducted the following colloquy with Defendant on 8 February 2023:

> THE DEFENDANT: Your Honor, I feel that due to the close knit of all of the attorneys in this area, that I would have -- I would not be allotted or given fair and unbiased representation by any attorneys here. So if the Court sees in its wisdom that counsel is needed, I ask that it be from a different area than here.
>
> THE COURT: Well, sir –
>
> THE DEFENDANT: If not, then I wish to proceed pro se on these matters on my own and have standby counsel.
>
> THE COURT: Well -- you want standby counsel?
>
> THE DEFENDANT: If I -- if the Court does not -- if the Court wishes to not honor my request for counsel outside of the Brunswick County area.
>
> THE COURT: Well, tell me why you're asking for counsel outside the Brunswick County area.
>
> THE DEFENDANT: Mr. Ramos is my second attorney in

- 3 -

22 months. And I have voiced both to Mr. Ramos and to Mr. Sullivan multiple times that I wish to go to trial with my case.

. . .

THE COURT: Yes, sir.

THE DEFENDANT: Especially when Mr. Sullivan found out when I received a specific written statement from the prosecuting attorney, therefore, stating that by law -- under North Carolina law, General Statute 14-27.36, the State was required to prove that a certain thing happened, and the prosecution at the time, Mr. Glenn Emery, specifically stated in a written piece of paper to Mr. Sullivan that that incident happened. And therefore I have spoken to both Mr. Sullivan and Mr. Ramos in my request to go to trial to have this proven. On top of that, both to Mr. Ramos -- may I take this off, Your Honor?

THE COURT: You can.

THE DEFENDANT: Thank you.

THE DEFENDANT: Thank you. Both to Mr. Ramos and to Mr. Sullivan, I have suggest that I believe this Court lacks personal jurisdiction over me.

THE COURT: You've suggested that before. That ship has sailed, Mr. Ingram. We've got personal jurisdiction.

THE DEFENDANT: Your Honor, then the Court would not mind here on the record now proving that to me. Under law.

THE COURT: The Court doesn't have to prove a thing, Mr. Ingram.

THE DEFENDANT: Under law, under Hagans v. Lavine, 1974, law requires all administrative agencies to show jurisdiction on the record. And because this Court failed to properly extradite me in a procedure, I received no

governor's warrant of arrest, therefore your process of your long-arm statute under the extradition clause is made invalid. And this Court has no statutory authority over me and no 14th Amendment due process, minimal contact.

THE COURT: Mr. Ingram, do you want an attorney appointed to your case, sir?

THE DEFENDANT: No, sir. I request to proceed pro se, and, if need be, have standby counsel.

THE COURT: All right. So you're able to hear and understand me; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: Are you now under the influence of any alcoholic beverages, drugs, narcotics, or other pills, Mr. Ingram? I'm not asking you that to be flippant. I need to ask some things on the record. Okay?

THE DEFENDANT: I understand that, sir. No, sir.

THE COURT: How old are you?

THE DEFENDANT: 42, sir.

THE COURT: Have you completed high school?

THE DEFENDANT: Yes, sir.

THE COURT: Did you complete college?

THE DEFENDANT: I completed some courses in college in various on-line institutions but never completed.

THE COURT: All right. Again, I'm not trying to be funny. Do you know how to read? Do you know how to write?

THE DEFENDANT: Yes, sir.

THE COURT: You do both of those things? That was your handwriting on those motions; correct?

THE DEFENDANT: Yes, sir.

THE COURT: And you can read just fine?

THE DEFENDANT: Yes, sir.

THE COURT: Do you suffer from any physical or mental issues that impair you?

THE DEFENDANT: I have minor PTSD, minor TBI, depression and anxiety from my deployments in Afghanistan and Iraq.

THE COURT: Okay.

THE DEFENDANT: However, Mr. Ramos' therapist, Jennifer Sapia, completed an interview of me and looked at my medical record, and when I spoke to her last year, she said that I proceed very competent and very competent to stand trial and proceed with this on my own.

THE COURT: Okay. So you don't have any physical or mental issues that impair your ability to represent yourself?

THE DEFENDANT: The only physical issue I have is pH plus chronic myeloid leukemia. But no, sir.

THE COURT: All right. Do you understand you have the right to be represented by an attorney?

THE DEFENDANT: Yes, sir, I do.

THE COURT: Do you understand that you may request a lawyer be appointed for you, that you've done that in the past, and that a lawyer will be appointed to you if you cannot afford to pay for one?

THE DEFENDANT: Yes, sir, I do.

THE COURT: If you, in fact, decide to represent yourself -- it sounds like that's what you want to do -- you must follow the same rules of evidence and procedure that a lawyer

appearing in this Court must follow.

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that if you decide to represent yourself, the Court will not give you legal advice concerning defenses?

THE DEFENDANT: Yes, sir.

THE COURT: Jury instructions?

THE DEFENDANT: Yes, sir.

THE COURT: Or other legal issues that may be raised during the trial?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that I have to act as an impartial judge in your case?

THE DEFENDANT: Yes, sir.

THE COURT: In any case?

THE DEFENDANT: Yes, sir.

THE COURT: And that I will not be able to offer you legal advice?

THE DEFENDANT: Yes, sir.

THE COURT: And that I must treat you just as I would treat a lawyer?

THE DEFENDANT: Yes, sir.

THE COURT: You understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand you're charged with –

THE DEFENDANT: Yes, sir.

THE COURT: -- 21 counts of sexual offense with a child by an adult?  Those are –

THE DEFENDANT: Yes, sir, I do.

THE COURT: -- B1 felonies; each one carries a possible maximum punishment of life in prison without parole?

THE DEFENDANT: Yes, sir.  However, I do not understand the nature of each of those charges.

THE COURT: And that a minimum sentence on each of those -- a minimum presumptive sentence is 192 months. If you're found guilty of one, it's a minimum sentence of 192 months.  And you have 21 of those.

THE DEFENDANT: Yes, sir.

THE COURT: All right.

THE DEFENDANT: However, again, I'd like the record to show that I do not understand the nature.

THE COURT: Okay.  With all of this in mind, do you have any questions about the charges other than you say you do not understand the nature of the charges?  And you've had two lawyers; correct?

THE DEFENDANT: That is correct.

THE COURT: All right.  Anything other than that?

THE DEFENDANT: No, Your Honor.

THE COURT: Do you now waive your right to the assistance of a lawyer and voluntarily and intelligently decide to represent yourself in these cases?

THE DEFENDANT: Yes, sir, I do.

THE COURT: That's what you wish to do?

THE DEFENDANT: Yes, sir, it is.

THE COURT: All right. Mr. Thomas Davis Ingram, Jr., has been fully informed in open court of the charges against him, the nature of and the statutory punishment for each charge, and the nature of the proceeding against the defendant, and his right to have counsel assigned by the Court, and his right to have the assistance of counsel to represent him in this action. I find that the defendant comprehends the nature of the charges and proceedings, and the minimum and maximum range of punishments, that he understands and appreciates the consequences of his decision, and that the defendant has voluntarily, knowingly, and intelligently elected in open court to be tried in this action without the assistance of counsel. You've indicated that you would -- you want standby counsel?

THE DEFENDANT: I would accept standby counsel. Yes, Your Honor. However, I do believe that, because of the relationship between Mr. Ramos and I, that -- he is correct, it has deteriorated.

The trial court allowed Defendant to waive his right to counsel, discharged Ramos, and appointed Ed Geddings as standby counsel. The grand jury returned superseding indictments for eighteen counts of the statutory sex offense with a child by an adult on 6 March 2023.

Defendant appeared before the trial court with his standby counsel, Geddings, on 6 June 2023 and the trial court again addressed Defendant on his desire to represent himself:

THE COURT: Thank you. Mr. Ingram, do you still wish to proceed representing yourself?

THE DEFENDANT: That is correct, Your Honor.

THE COURT: Do you understand you have standby counsel that's been appointed to you?

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT: I think Mr. Geddings has come and talked to you?

THE DEFENDANT: Yes, sir, he has. Multiple times.

THE COURT: All right. You're able to hear and understand me?

THE DEFENDANT: Yes, sir, I am.

THE COURT: Do you understand what you're charged with? I believe it's –

THE DEFENDANT: Yes, sir. I understand.

THE COURT: -- 24 counts of first-degree sex offense –

THE DEFENDANT: Yes, sir.

THE COURT: -- with a child.

THE DEFENDANT: Yes, sir.

THE COURT: Those are all Class B1 felonies; is that correct, Ms. Earley?

MS. EARLEY: Yes, sir.

THE COURT: Do you understand that all Class B1 felonies carry a possible maximum punishment of life in prison without parole?

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT: Are you now under the influence of any alcohol beverages, narcotics, or any other pills?

THE DEFENDANT: No, Your Honor.

THE COURT: How old are you, sir?

THE DEFENDANT: 42, Your Honor.

THE COURT: Have you completed high school?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Did you complete college?

THE DEFENDANT: Some. But never acquired a degree.

THE COURT: So you understand how to read?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You understand how to write?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you suffer from any physical or mental issues that may impair you?

THE DEFENDANT: I have depression, PTSD, TPI, and anxiety, but other than that no, Your Honor.

THE COURT: Do those impair your ability to represent yourself in your opinion?

THE DEFENDANT: No, Your Honor.

THE COURT: Do you understand you have the right to be represented by an attorney?

THE DEFENDANT: Yes, Your Honor, I do.

THE COURT: And do you understand that you may request that a lawyer be appointed for you, and that a lawyer will be appointed to you if you cannot afford to pay for one?

THE DEFENDANT: Yes, Your Honor, I do.

THE COURT: Do you understand that by you deciding to

represent yourself, you must follow the same Rules of Evidence and procedure that a lawyer appearing in this courtroom must follow?

THE DEFENDANT: Yes, Your Honor, I do.

THE COURT: And do you understand that if you decide to represent yourself, continue to move forward in representing yourself, the Court will not give you legal advice concerning defenses, jury instructions, or other legal issues that might be raised during trial?

THE DEFENDANT: Yes, Your Honor, I do.

THE COURT: And do you understand that I must act as an impartial judge in this case, I will not be able to offer you any legal advice, and I must treat you the same way I treat a lawyer?

THE DEFENDANT: Yes, Your Honor.

THE COURT: With all of these things in mind, do you wish to ask me any questions about what I've just said to you regarding your right to represent yourself?

THE DEFENDANT: I thought we've taken care of this before.

THE COURT: We have. But I want to make sure -- I want to be crystal clear, Mr. Ingram, because your trial date is fast approaching.

THE DEFENDANT: Yes, Your Honor. I understand that.

THE COURT: Do you have any other questions for me?

THE DEFENDANT: No, Your Honor.

THE COURT: And you're continuing to waive your right to the assistance of a lawyer, and you're voluntarily and intelligently deciding to represent yourself in this case?

THE DEFENDANT: Yes, Your Honor, I am.

Defendant had also previously filed a written request for a bench trial with the trial court. The trial court denied this request. Defendant returned to the trial court the next day on 7 June 2023 for a motions hearing. Defendant represented himself at the hearing, with Geddings present as standby counsel, and asked the trial court to reconsider denying his request for a bench trial:

> THE COURT: All right. So you're asking me to reconsider my order; is that correct?
>
> THE DEFENDANT: That is correct, Your Honor. I am. I am asking you to reconsider that order due to the fact that I cannot find anywhere under the law library to help me understand what with the jury instructions, and things like that, I cannot find any jury instructions for North Carolina in the law library; and, therefore, I believe due to the fact that this – there's only speculation and suspicion that these crimes were committed, the only way that the State would be able to get a conviction is through a jury. Because a jury uses -- maybe have to be impartial, however a jury uses their feelings as well.
>
> THE COURT: Well, you understand that if the Court allowed the waiver of a jury trial, Mr. Ingram, that one person decides your fate at that point
>
> THE DEFENDANT: Yes, Your Honor. I do. However, I understand that underneath the Court, prior precedence in court cases also determine to help with law. And that under the Court, it is the Judge must look at everything as a matter of fact and under the law, and if they're only -- if any substantial evidence, even though in view light most -- in view light most favor of the State, it is still only conjure -- conjuncture, unrelevant (verbatim) influence, suspicion, or speculation is still present, then a motion to dismiss automatically should be granted. And therefore under a trial by court, that is all taken into consideration and therefore the jury is left out of that decision. It all is

determined -- it all comes down to the actual facts and that of law.

THE COURT: You understand that instead of 12 people being the finders of fact, there's just one person being the finder of fact?

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT: In that scenario?

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT: What is the State's position as to whether or not the State agrees or objects to defendant's waiver of his right to a jury trial?  Does the State have a position?

[THE STATE]: I don't have a position, Judge.  I trust whatever decision you make.  And the State will move forward with whatever decision you make.

THE COURT: Does the State stipulate to a bench trial?

[THE STATE]: Judge, we honestly do not have a position; and if you want to order a bench trial, we have no objection. I mean, from experience, the vast majority of defendants want a jury trial.

THE COURT: Correct.

[THE STATE}: In these situations.

THE DEFENDANT: Your Honor, may I speak?

THE COURT: You may.

THE DEFENDANT: I understand that the vast majority of defendants request a jury trial.  However, the vast majority of defendants also are not proceeding pro se, they have legal counsel, which are schooled and properly educated, and know the proper ethics and instructions when it comes to jury.  I believe that a bench trial for me as proceeding pro se and intending to want to proceed pro se is best easier

put on me and completion of -- and completion of the justice of law.

[THE STATE]: Judge, I think this kind of goes back to yesterday when you said the Judge can't help him. The Judge can't tell him which evidence to put on, they can't tell him what's objectionable, and again they can't give him any guidance on the law. As far as jury instructions go, the pattern jury instructions, the Court has those.

THE DEFENDANT: I'm sorry, Your Honor. But again, I can't find anywhere that there's jury instructions.

THE COURT: There are jury instructions, Mr. Ingram.

THE DEFENDANT: Again, Your Honor, I've asked for legal material concerning jury instructions, concerning case laws, concerning –

THE COURT: Well, that's –

THE DEFENDANT: -- other things.

THE COURT: That's not the State of North Carolina's job to provide you with jury instructions or to provide you with case law.

THE DEFENDANT: I understand that, Your Honor, but –

THE COURT: That's something you can certainly ask your standby counsel about.

THE DEFENDANT: And I did that now, Your Honor, but -- however, I was told that I could request legal material through the department -- through the -- sorry, through the county Detention Center, and that they would get with the State to provide that.

THE COURT: All right.

[THE STATE]: And Judge, just so -- I don't know if -- this case is scheduled September 25th. Obviously, that's supposed to be Judge Willey. I don't know if you want to

table this motion to put it before him or if you want to make the decision. Either way, the State is fine.

THE COURT: Well, if the State will stipulate to a bench trial, I can make a decision today, [Mr. District Attorney], but I'm not trying to pressure you.

[THE STATE]: I'll stipulate to a bench trial. Sure.

THE COURT: And Mr. Ingram, you recall from yesterday I went over with you what all your charges were?

THE DEFENDANT: Yes, Your Honor. I do.

THE COURT: And you recall me going over with you the nature and the statutory punishment for each charge being life in prison without parole?

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT: Do you understand you would be the one that would be participating in the selection of members of the jury?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You understand that? You understand that the jury verdict in each case -- I think there are 24 counts -- would have to be unanimous?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you're still requesting a waiver of a jury trial and asking for a bench trial?

THE DEFENDANT: That is correct, Your Honor.

THE COURT: All right. You can be seated.

THE DEFENDANT: Yes, Your Honor.

THE COURT: Will you swear Mr. Ingram, please, Madam Clerk.

(Sworn as to waiver of a jury trial)

THE DEFENDANT: Yes, ma'am.

THE COURT: Madam Sheriff, will you please hand this to the defendant. I placed an X where you're to sign, Mr. Ingram. Mr. Geddings, as standby counsel, would you mind signing that certification. I believe you've been having conversations with Mr. Ingram at counsel table regarding this. Have you, in fact, had those conversations?

MR. GEDDINGS: Yes, we have.

THE COURT: All right. And you can just write in "standby counsel," please. (Complied) (Bailiff approached the bench)

THE COURT: Thank you. All right. The Court consents to the defendant's waiver of the right to a trial by jury, and the charge against the defendant shall proceed in accordance with that waiver as otherwise required by law. I'm allowing your motion for a bench trial, Mr. Ingram.

THE DEFENDANT: Thank you, Your Honor.

Defendant executed a signed waiver of jury trial. Attorney Geddings also signed this waiver as standby counsel. Defendant was indicted by superseding indictments for the twenty-four counts of first-degree statutory sexual offense with a child by an adult and twenty-four counts of indecent liberties with a child on 21 August 2023.

Defendant was tried on the twenty-four counts of first-degree statutory sex offense with a child by an adult and twenty-four counts of indecent liberties with a child beginning on 26 September 2023. Prior to beginning the trial, the trial court inquired into his 7 June 2023 waiver of a jury trial and Geddings being present as

standby counsel. Defendant represented himself during preliminary matters, opening statements, and three of the State's witnesses. On the second day of trial, Defendant revoked his waiver of counsel. The trial court accepted Defendant's revocation and directed attorney Geddings to represent Defendant for the remainder of trial.

Following a bench trial, the trial court found Defendant guilty of fifteen counts of statutory sexual offense with a child by an adult and fifteen counts of taking indecent liberties with a child. The trial court found Defendant not guilty of nine counts of statutory sexual offense with a child by an adult and not guilty of nine counts of taking indecent liberties with a child.

The trial court consolidated twelve counts of the statutory sexual offense with a child by an adult and fifteen counts of the indecent liberties with a child into a single judgment and sentenced Defendant as a prior record level I with 0 prior record level points to an active sentence of 300 to 369 months. The remaining three counts of statutory sexual offense with a child by an adult were consolidated into a separate judgment and the trial court imposed an active sentence of 300 to 400 months, with both sentences to run consecutively. Defendant appealed. The trial court made appellate entries.

The Department of Adult Corrections notified the Clerk of Superior Court in Brunswick County Defendant was improperly sentenced because the date of the offenses were 1 January 2010.

Defendant returned to the trial court on 7 February 2024. The trial court vacated the twelve counts of the statutory sexual offense with a child by an adult and fifteen counts of the indecent liberties with a child judgment and resentenced Defendant. Defendant was sentenced to an active sentence of 240 to 297 months for the twelve statutory sexual offense with a child by an adult and fifteen counts of the indecent liberties with a child. The trial court did not disturb the 300-to-400-month active consecutive sentence for the three statutory sexual offense with a child by an adult judgment.

## II.    Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. §§ 7A-27(b) and 15A-1444(a) (2025).

## III.    Issues

Defendant argues the trial court erred in granting Defendant's request to proceed *pro se* and in granting his request to waive a jury trial and to proceed to a bench trial.

## IV.    Defendant's Right to Counsel

Our Court has long held a defendant may waive his right to be represented by counsel after being fully advised under N.C. Gen. Stat. § 15A-1242 (2025), and a knowing and voluntary waiver. This Court held in *State v. Blakeney*:

> a defendant may voluntarily waive the right to be
> represented by counsel and instead proceed *pro se*. Waiver
> of the right to counsel and election to proceed *pro se* must

be expressed clearly and unequivocally. Once a defendant clearly and unequivocally states that he wants to proceed *pro se*, the trial court must determine whether the defendant knowingly, intelligently, and voluntarily waives the right to in-court representation by counsel. A trial court's inquiry will satisfy this constitutional requirement if conducted pursuant to N.C.G.S. § 15A-1242.

245 N.C. App. 452, 459, 782 S.E.2d 88, 93 (2016). (internal citations, ellipses, alterations, and quotation marks omitted).

## A. Standard of Review

Whether a defendant was entitled to or has forfeited counsel is also reviewed *de novo*. *State v. Poole*, 305 N.C. 308, 318, 289 S.E.2d 335, 341-42 (1982) (citations omitted); *Blakeney*, 245 N.C. App. at 459, 782 S.E.2d at 93.

## B. Analysis

### *1. Waiver or right to Counsel*

Both the Constitution of the United States and the North Carolina Constitution recognize criminal defendants have a right to assistance of counsel. U.S. Const. Amend. VI.; N.C. Const. Art I, §§ 19, 23; *see also Powell v. Alabama*, 287 U.S. 45, 66, 77 L. Ed. 158, 169 (1932); *State v. McFadden*, 292 N.C. 609, 611, 234 S.E.2d 742, 744 (1977) (citations omitted); *State v. Montgomery*, 138 N.C. App. 521, 524, 530 S.E.2d 66, 68 (2000). Criminal defendants also have the absolute right to waive counsel, represent themselves, and handle their case without the assistance of counsel. *State v. Mems*, 281 N.C. 658, 670-71, 190 S.E.2d 164, 172 (1972); *State v. Thacker*, 301 N.C. 348, 271 S.E.2d 252 (1980).

### 2. *Statutory Sex Offense of a Child by an Adult*

Defendant argues the trial court violated his right to counsel by permitting him to proceed *pro se* when he expressly stated he did not understand the nature of charges for statutory sex offense of a child by an adult. Before a defendant is allowed to waive the right to counsel, a trial court must conduct a statutorily-required colloquy to determine that "constitutional and statutory safeguards are satisfied." *State v. Moore*, 362 N.C. 319, 322, 661 S.E.2d 722, 724 (2008) (citation omitted). Courts "must determine whether the defendant knowingly, intelligently and voluntarily waives the right to in-court representation by counsel." *Id.* (citation omitted).

The procedure to waive counsel is codified in N.C. Gen. Stat. § 15A-1242 (2025). Courts may only enter an order to allow defendants to waive their right to counsel after being satisfied the movant: (1) has been clearly advised of his rights to the assistance of counsel, including his right to the assignment of appointed counsel when he is so entitled; (2) understands and appreciates the consequences of the decision; and, (3) comprehends the nature of the charges and proceedings and the range of permissible punishments. *Id.* (citation omitted). A "trial court must obtain a written waiver of the right to counsel." *State v. Thomas*, 331 N.C. 671, 675, 417 S.E.2d 473, 476 (1992) (citation omitted).

The record indicates Defendant executed a written waiver of court-appointed counsel on 8 February 2023 after the trial court had conducted a detailed colloquy

into Defendant's present mental state, not being under the influence of any drugs or intoxicants, understanding of the charge and its possible punishment, level of education attained, right to appointed or retained counsel, right to represent himself, and Defendant's obligations and responsibilities if he decided to represent himself. The transcript also reflects the trial court conducted a similar colloquy on 6 June 2023.

Written waivers of counsel, certified by the trial court, create a rebuttable presumption the waiver was executed knowingly, intelligently, and voluntarily pursuant to N.C. Gen. Stat. § 15A-1242 (2025). *State v. Kinlock*, 152 N.C. App. 84, 89, 566 S.E.2d 738, 741 (2002) (citation omitted), *aff'd per curiam*, 357 N.C. 48, 577 S.E.2d 620 (2003). "Once a written waiver of counsel is executed and certified by the trial court, subsequent waivers or inquiries are not necessary before further proceedings." *State v. Harper*, 285 N.C. App. 507, 517, 877 S.E.2d 771, 780 (2022) (citation omitted).

Defendant argues he did not understand the nature of the statutory sex offense with a child by an adult. Defendant asserts during his colloquy on 8 February 2023, when the trial court was informing him of the maximum sentence he was facing, he twice stated he did not know the nature of the charges against him. The following is taken from the transcript:

> THE COURT: Do you understand you're charged with –
>
> THE DEFENDANT: Yes, sir.

> THE COURT: -- 21 counts of sexual offense with a child by an adult? Those are –
>
> THE DEFENDANT: Yes, sir, I do.

The trial court inquired into Defendant's understanding of the seriousness of the statutory sex offense with a child by an adult charges and Defendant expressly stated he also understood the maximum and minimum punishment for the B1 felony charges he was facing. Despite his posture he did not understand the nature of the charges against him, he answered to the court he understood the charges and the maximum and minimum sentences he was facing. Defendant then signed his waiver of counsel which explicitly acknowledged he had been informed of the nature of the charges and the statutory punishment for them.

The trial court further inquired on 6 June 2023 into Defendant's waiver of counsel, and he again answered the same questions in the affirmative, but without the posture asserting he did not understand the nature of the charges against him. Defendant also wrote a *pro se* motion to have his appointed counsel replaced on 7 October 2022, wherein he alleged "I strongly feel that because of the nature of the alleged accusation against me[.]"

The trial court inquired into Defendant's understanding of the seriousness of the charges on at least two occasions. In both instances, Defendant acknowledged his understanding. The trial court counseled Defendant twice on the seriousness of the charges and the need for counsel. The trial court appointed standby counsel for

Defendant in light of the seriousness of the charges and his request for standby counsel. At the second colloquy the trial court asked, "Do you have any other questions for me? Defendant responded: "No, Your Honor." The trial court continued: "And you're continuing to waive your right to the assistance of a lawyer, and you're voluntarily and intelligently deciding to represent yourself in this case?" Defendant responded: "Yes, Your Honor, I am." Defendant's argument is overruled.

### 3. *Indecent Liberties with a Minor*

Defendant further argues he did not waive his right to counsel on the indecent liberties charges. Defendant asserts his waivers of counsel on 8 February 2023 and 6 June 2023 never contemplated his later indecent liberties with a child charges, for which he was indicted on 21 August 2023. He asserts a violation of N.C. Gen. Stat. § 15A-942 (2025), which requires the trial court to "verify that the defendant is aware of his right to counsel, that the defendant has been given the opportunity to exercise that right, and must take any action necessary to effectuate that right on behalf of the defendant."

Here, the transcript shows the trial court did not make any further inquiry of Defendant's right to counsel after the 21 August 2023 indictments for indecent liberties with a child, other than noting Geddings being present at trial on a stand-by basis. This Court has long held first-degree sex offense and indecent liberties with a child are separate and distinct charges. *See State v. Manley*, 95 N.C. App. 213, 217, 381 S.E.2d 900, 902 (1989). Defendant's earlier valid waivers of counsel for his first-

degree statutory sex offense with a child by an adult charges was not valid on the later indicted separate and distinct indictments for indecent liberties with a child.

Defendant asserts if the indecent liberties charges are vacated, the statutory sex offense with a child by an adult convictions must also be overturned, and he is entitled to a new trial. Defendant cites *State v. Anderson*, 215 N.C. App. 169, 721 S.E.2d 233 (2011), *aff'd per curiam*, 365 N.C. 466, 722 S.E.2d 509 (2012), wherein a defendant was awarded a new trial on both offenses when he was initially charged with possession of cocaine and was later indicted for attaining the status of a habitual felon. *Id.* at 169, 721 S.E.2d at 234. The defendant in *Anderson* first purported to waive his right to counsel in district court, without a transcript of the colloquy. The defendant was later indicted with attaining habitual felon status. *Id.* The defendant executed a second purported waiver of counsel wherein all individuals of the court session who wished to represent themselves were "directed to sit 'in a box.'" *Id.* at 171, 721 S.E.2d at 235. The trial court then directed all individuals to come when their name was called to sign a waiver of counsel and be told when their court date was by the district attorney. *Id.* at 172, 721 S.E.2d at 235.

In *Anderson*, where during the initial waiver of counsel in district court on a drug possession charge, prior to being indicted for attaining the status of a habitual felon, this Court noted "As there is no transcript of [the d]efendant's district court appearance, we are unable to determine to what extent [the d]efendant was informed of the charges against him and the potential punishment for those charges." *Id.* at

171, 721 S.E.2d at 235. This Court held both were insufficient at the subsequent trial.

Unlike in *Anderson*, where the defendant was awarded a new trial on both charges because he never had a valid signed waiver on either charge, including the first charge, here, Defendant had valid multiple informed waivers on his statutory sex offense with a child by an adult charges. Those convictions remain undisturbed. *Id.*

The trial court consolidated the convictions for first-degree statutory sex offense with a child by an adult and the indecent liberties with a child into two separate judgments. Defendant's judgment for twelve counts of the statutory sexual offense with a child by an adult and fifteen counts of the indecent liberties with a child is vacated, and the cause is remanded to the superior court for resentencing on the sex offense charges. *See State v. Moore*, 327 N.C. 378, 383-84, 345 S.E.2d 124, 128 (1990). Defendant's convictions and judgment of 300 to 400 months for three statutory sex offense with a child by an adult convictions remains undisturbed.

In light of our decision to vacate the indecent liberties convictions, we need not reach Defendant's remaining arguments concerning his waiver of a jury trial on his indecent liberties with a child charges.

## V. Conclusion

Defendant knowingly and voluntarily waived his right to counsel on his first-degree statutory sex offense with a child by an adult charges. Those convictions are

affirmed.

The trial court did not verify with Defendant his waiver of his right to counsel on his subsequently-indicted indecent liberties with a child charges. The judgment of the trial court on the twelve counts of the statutory sexual offense with a child by an adult and fifteen counts of the indecent liberties with a child is vacated and this cause is remanded solely for a new sentencing on the twelve counts of statutory sexual offense with a child by an adult. Defendant's judgment for the three counts of statutory sexual offense with a child by an adult remains undisturbed. *It is so ordered.*

AFFIRMED IN PART; VACATED IN PART; JUDGMENT VACATED AND REMANDED FOR RESENTENCING.

Judges GRIFFIN and FLOOD concur.